IDA A. VAN DYKE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

CLEVE W. VAN DYKE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 18868, 18870. Promulgated June 30, 1931.

*R. A. Bartlett, Esq.,* for the petitioners.
*M. E. McDowell, Esq.,* for the respondent.

## OPINION.

MATTHEWS: The petition in Docket No. 18870 seeks a redetermination of deficiencies for several years including the year 1922. However, there is no assignment of error for that year and the respondent has not determined a deficiency for that year. This proceeding, therefore, in so far as the year 1922 is concerned, is hereby dismissed.

The petitioners are claiming the right to deduct certain amounts as bad debts for the years 1920 and 1921. As shown in our findings of fact, the claimed deductions for 1920, the debts of Thos. Burns, Wm. Nash, Wm. Stephens and W. P. Taylor, were not charged off the books until 1921. With regard to the remaining debts which the petitioners are claiming as deductions for 1921, they represent in some instances advances by a corporation of which the petitioner, Cleve W. Van Dyke, was an officer. Although evidence was presented as to the circumstances surrounding the creation of these debts, some of which had been created many years prior to 1921, there was no evidence presented as to the ascertainment of worthlessness in either 1920 or 1921, or as to the basis for charging these

amounts off in 1921. Upon this state of the evidence we can not find that these debts were ascertained to be worthless in that year. The action of the respondent in disallowing these deductions for both 1920 and 1921 is sustained.

The petitioners contend that the loss resulting from the investment of Cleve W. Van Dyke in the Calhoun Timber Company is a "net loss" within the meaning of section 204 of the Revenue Act of 1921. That section provides:

That as used in this section the term "net loss" means only net losses resulting from the operation of any trade or business regularly carried on by the taxpayer (including losses sustained from the sale or other disposition of real estate, machinery, and other capital assets, used in the conduct of such trade or business); * * *

The evidence shows that Van Dyke's activities for a number of years had been the development and promotion of town sites, particularly with regard to organizing public utilities. He was not instrumental in organizing the Calhoun Timber Company but some years after its organization advanced money to it, apparently receiving stock as security for the advances. The company was engaged mainly in the timber business and Van Dyke's duties as president were to a large extent in connection with such activities. We fail to see how these activities, as officer and stockholder, were a part of his trade or business. It is true that he testified that he was interested in the town site possibilities, but as a matter of fact he did not promote any town sites on the property and we believe that this purpose was merely incidental to his purpose of making an investment in the company for a profit. In *J. L. Washburn*, 16 B. T. A. 1091, on appeal, we said:

This railroad corporation was not a business carried on by the petitioner, but merely a business in which he had an investment. Whatever loss may have been suffered by the corporation through the sale of its capital assets was its loss as a separate entity and this was not the same thing as the loss sustained by the petitioner on account of his investment in the stock of the corporation which carried on the business. A loss thus incurred is not a loss from a business regularly carried on by the petitioner, even though he was the principal stockholder and was active in the conduct of the corporation's business. *J. J. Harrington*, 1 B. T. A. 11; *Isadore Finkelstein*, 10 B. T. A. 585; *Margaret B. McLaughlin, Executrix*, 12 B. T. A. 19; *Horace I. Lepman et al.*, 15 B. T. A. 767.

The loss resulting from the failure of the Calhoun Timber Company was not a loss incurred by Van Dyke in a trade or business and is not deductible from the petitioners' net incomes of 1923 and 1924 as a net loss.

In accordance with the stipulation set forth in our findings of fact, the petitioners are entitled to a deduction of $1,400.26 for payroll expenses, one-half of which is allocable to each petitioner.

*Judgment will be entered under Rule 50.*