## HIGGINS v. COMMISSIONER OF INTERNAL REVENUE.

No. 253.   Argued January 10, 13, 1941.—Decided February 3, 1941.

*Mr. Selden Bacon,* with whom *Mr. Orwill V. W. Hawkins* was on the brief, for petitioner.

*Mr. Arnold Raum,* with whom *Solicitor General Biddle, Assistant Attorney General Clark,* and *Messrs. Sewall Key* and *Lee A. Jackson* were on the brief, for respondent.

*Messrs. Rollin Browne, John G. Jackson, Jr.,* and *George Craven* filed a brief, as *amici curiae,* urging reversal.

MR. JUSTICE REED delivered the opinion of the Court.

Petitioner, the taxpayer, with extensive investments in real estate, bonds and stocks, devoted a considerable portion of his time to the oversight of his interests and hired others to assist him in offices rented for that purpose. For the tax years in question, 1932 and 1933, he claimed the salaries and expenses incident to looking after his properties were deductible under § 23 (a) of

the Revenue Act of 1932.[1]  The Commissioner refused the deductions.  The applicable phrases are: "In computing net income there shall be allowed as deductions: (a) *Expenses.*—All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business . . ."  There is no dispute over whether the claimed deductions are ordinary and necessary expenses.  As the Commissioner also conceded before the Board of Tax Appeals that the real estate activities of the petitioner in renting buildings [2] constituted a business, the Board allowed such portions of the claimed deductions as were fairly allocable to the handling of the real estate.  The same offices and staffs handled both real estate and security matters.  After this adjustment there remained for the year 1932 over twenty and for the year 1933 over sixteen thousand dollars expended for managing the stocks and bonds.

Petitioner's financial affairs were conducted through his New York office pursuant to his personal detailed instructions.  His residence was in Paris, France, where he had a second office.  By cable, telephone and mail, petitioner kept a watchful eye over his securities.  While he sought permanent investments, changes, redemptions, maturities and accumulations caused limited shiftings in his portfolio.  These were made under his own orders. The offices kept records, received securities, interest and dividend checks, made deposits, forwarded weekly and annual reports and undertook generally the care of the investments as instructed by the owner.  Purchases were made by a financial institution.  Petitioner did not participate directly or indirectly in the management of the corporations in which he held stock or bonds.  The method of handling his affairs under examination had been employed by petitioner for more than thirty years.

[1] 47 Stat. 169, c. 209.

[2] Cf. *Pinchot* v. *Commissioner*, 113 F. 2d 718.

No objection to the deductions had previously been made by the Government.

The Board of Tax Appeals [3] held that these activities did not constitute carrying on a business and that the expenses were capable of apportionment between the real estate and the investments. The Circuit Court of Appeals affirmed,[4] and we granted certiorari because of conflict.[5]

Petitioner urges that the "elements of continuity, constant repetition, regularity and extent" differentiate his activities from the occasional like actions of the small investor. His activity is and the occasional action is not "carrying on business." On the other hand, the respondent urges that "mere personal investment activities never constitute carrying on a trade or business, no matter how much of one's time or of one's employees' time they may occupy."

Since the first income tax act, the provisions authorizing business deductions have varied only slightly. The Revenue Act of 1913 [6] allowed as a deduction "the necessary expenses actually paid in carrying on any business." By 1918 the present form was fixed and has so continued.[7] No regulation has ever been promulgated which interprets the meaning of "carrying on a business," nor any rulings approved by the Secretary of the Treasury, i. e., Treasury Decisions.[8] Certain rulings of less dignity, favorable to petitioner,[9] appeared in individual cases but

---

[3] 39 B. T. A. 1005.

[4] 111 F. 2d 795.

[5] *Kales* v. *Commissioner*, 101 F. 2d 35; *DuPont* v. *Deputy*, 103 F. 2d 257.

[6] 38 Stat. 167, § II B.

[7] 40 Stat. 1066, § 214 (a) (1).

[8] Cf. *Helvering* v. *New York Trust Co.*, 292 U. S. 455, 467–468.

[9] O. D. 537, 2 C. B. 175 (1920); O. D. 877, 4 C. B. 123 (1921); I. T. 2751, XIII–1 C. B. 43 (1934). See also 1934 C. C. H. Federal Tax Service, Vol. 3, ¶ 6035, p. 8027.

they are not determinative.[10] Even acquiescence[11] in some Board rulings after defeat does not amount to settled administrative practice.[12] Unless the administrative practice is long continued and substantially uniform in the Bureau and without challenge by the Government in the Board and courts, it should not be assumed, from rulings of this class, that Congressional reënactment of the language which they construed was an adoption of their interpretation.

While the Commissioner has combated views similar to petitioner's in the courts, sometimes successfully[13] and sometimes unsuccessfully,[14] the petitioner urges that the Bureau accepted for years the doctrine that the management of one's own securities might be a business where there was sufficient extent, continuity, variety and regularity. We fail to find such a fixed administrative construction in the examples cited. It is true that the decisions are frequently put on the ground that the taxpayer's activities were sporadic but it does not follow that had those activities been continuous the Commissioner would not have used the argument advanced here, i. e., that no amount of personal investment management would turn those activities into a business. Evidently such was the Government's contention in the *Kales*

[10] *Biddle* v. *Commissioner*, 302 U. S. 573, 582. Cf. *Estate of Sanford* v. *Commissioner*, 308 U. S. 39, 52. But see *Helvering* v. *Bliss*, 293 U. S. 144, 151, and *McFeely* v. *Commissioner*, 296 U. S. 102, 108.

[11] Kissel *v.* Commissioner, 15 B. T. A. 1270, acquiesced in VIII–2 C. B. 28 (1929); Croker *v.* Commissioner, 27 B. T. A. 588, acquiesced in XII–1 C. B. 4 (1933).

[12] *Higgins* v. *Smith*, 308 U. S. 473, 478–479.

[13] *Bedell* v. *Commissioner*, 30 F. 2d 622, 624; *Monell* v. *Helvering*, 70 F. 2d 631; *Kane* v. *Commissioner*, 100 F. 2d 382.

[14] *Kales* v. *Commissioner*, 101 F. 2d 35; *DuPont* v. *Deputy*, 103 F. 2d 257, 259, reversed on other grounds, 308 U. S. 488.

case,[15] where the things the taxpayer did met petitioner's tests, and in *Foss* v. *Commissioner*[16] and *Washburn* v. *Commissioner*[17] where the opinions turned on the extent of the taxpayer's participation in the management of the corporations in which investments were held.[18]

Petitioner relies strongly on the definition of business in *Flint* v. *Stone Tracy Company:*[19] " 'Business' is a very comprehensive term and embraces everything about which a person can be employed." This definition was given in considering whether certain corporations came under the Corporation Tax law which levies a tax on corporations engaged in business. The immediate issue was whether corporations engaged principally in the "holding and management of real estate"[20] were subject to the act. A definition given for such an issue is not controlling in this dissimilar inquiry.[21]

To determine whether the activities of a taxpayer are "carrying on a business" requires an examination of the facts in each case. As the Circuit Court of Appeals observed, all expenses of every business transaction are not deductible. Only those are deductible which relate to carrying on a business. The Bureau of Internal Revenue has this duty of determining what is carrying on a business, subject to reëxamination of the facts by the Board of Tax Appeals[22] and ultimately to review on the law by the

---

[15] *Kales* v. *Commissioner,* 34 B. T. A. 1046, 101 F. 2d 35.

[16] 75 F. 2d 326.

[17] 51 F. 2d 949, 953.

[18] Cf. Roebling *v.* Commissioner, 37 B. T. A. 82; Heilbroner *v.* Commissioner, 34 B. T. A. 1200.

[19] 220 U. S. 107, 171.

[20] *Id.* 169.

[21] *Cohens* v. *Virginia,* 6 Wheat. 264, 399; *Puerto Rico* v. *Shell Co.,* 302 U. S. 253, 269.

[22] Revenue Act of 1932, 47 Stat. 169, § 272; Internal Revenue Code, § 272.

courts on which jurisdiction is conferred.[23] The Commissioner and the Board appraised the evidence here as insufficient to establish petitioner's activities as those of carrying on a business. The petitioner merely kept records and collected interest and dividends from his securities, through managerial attention for his investments. No matter how large the estate or how continuous or extended the work required may be, such facts are not sufficient as a matter of law to permit the courts to reverse the decision of the Board. Its conclusion is adequately supported by this record, and rests upon a conception of carrying on business similar to that expressed by this Court for an antecedent section.[24]

The petitioner makes the point that his activities in managing his estate, both realty and personalty, were a unified business. Since it was admittedly a business in so far as the realty is concerned, he urges, there is no statutory authority to sever expenses allocable to the securities. But we see no reason why expenses not attributable, as we have just held these are not, to carrying on business cannot be apportioned. It is not unusual to allocate expenses paid for services partly personal and partly business.[25]

*Affirmed.*

---

[23] Internal Revenue Code, § 1141.

[24] *Van Wart* v. *Commissioner*, 295 U. S. 112, 115.

[25] 3 Paul & Mertens, Law of Federal Income Taxation § 23.65; cf. *National Outdoor Advertising Bureau* v. *Helvering*, 89 F. 2d 878, 881.