JOHN C. SCULLY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 101992. Promulgated August 28, 1941.

*J. G. Korner, Jr., Esq.,* for the petitioner.
*David Altman, Esq.,* for the respondent.

OPINION.

ARNOLD: Petitioner claims as deductions from gross income in the respective years under section 23 (a) of the Revenue Act of 1936, set forth in the margin,[1] the items listed in our findings of fact.

Respondent now concedes that petitioner's farming activities constituted the carrying on of a trade or business during the taxable years and that the proportionate part of petitioner's expenses which is attributable thereto, not exceeding 60 percent, is deductible. He contends that the remaining 40 percent is not attributable to ordinary and necessary expenses paid during the taxable year in carrying on a trade or business, and that the problem presented is primarily one of allocation, the formula for which has been approved by the Supreme Court in *Higgins* v. *Commissioner*, 312 U. S. 212.

He contends that *Higgins* v. *Commissioner*, *supra*, sets at rest the many confusing and conflicting conclusions reached by the Board and the courts in prior decisions as to what constitutes the carrying on of a trade or business. The questions we have for determination are (1) whether any part of the expenses not allocable to petitioner's farming activities is attributable to a trade or business carried on by petitioner during the taxable years, and, if no part is so allocable, then (2) the portion of his expenses that is attributable to his farming operations.

---

[1] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

(a) EXPENSES.—All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered; traveling expenses (including the entire amount expended for meals and lodging) while way from home in the pursuit of a trade or business; * * *

The *Higgins* case holds, in line with numerous Board and court cases, that what constitutes carrying on a trade or business depends upon the facts and circumstances in each particular case. While it does not lay down a controlling principle of law applying to cases generally nor define business, it does determine that collecting interest and dividends on securities, keeping accounts, and making limited shifts of securities from time to time in the interest of safety and returns, do not constitute the carrying on of a trade or business, regardless of the amounts involved.

There the taxpayer, in addition to his real estate activities in New York, which were held to constitute a business, owned approximately $16,000,000 of nontaxable securities and $10,000,000 taxable securities. He resided in Paris, France, and his activities were transacted through employees in a New York office maintained by him, and an office in Paris where duplicates of some of his records were kept. He was in almost daily communication with his New York office and personally directed the most important matters both as to his real estate and investment activities. His purchases of securities were small as compared with his total investments. The Commissioner disallowed the deductions claimed on the ground they were not necessary expenses paid in carrying on a trade or business, as the Commissioner did here. On review the Board, 39 B. T. A. 1005, likewise determined and the Second Circuit, 111 Fed. (2d) 795, affirmed, and the Supreme Court approved.

We think petitioner's activities outside his farming operations did not constitute a trade or business carried on by him, under the authority of *Higgins* v. *Commissioner*, *supra; City Bank Farmers Trust Co.* v. *Helvering*, 313 U. S. 121, and *United States* v. *Pyne*, 313 U. S. 127. He received the royalties, but the gains and profits derived from investments thereof belong to him as life tenant. The remaindermen had no interest in such earnings and profits. This was true as to the accumulated royalties in the form of securities in which petitioner had invested them. All such earnings and profits inured to the benefit of petitioner. Petitioner had ceased operating the lands included in the lease to him for oil prior to the taxable years and nothing thereafter remained to be done by him except to receive, as a matter of routine, the royalty proceeds from time to time as the royalty was produced and sold. They were his to invest and he invested them for his own use and benefit.

Petitioner kept records of all investments and the interest and dividends received, keeping in separate lists the securities belonging to the remaindermen and himself. The securities of the remaindermen were in bonds, while his own consisted of both bonds and stock.

But five securities belonging to the remaindermen were sold or called for payment in 1936 and the same number in 1937, and it does not appear that any purchases were made out of funds belonging to the remaindermen in either year. Of his own securities but six were sold or called for payment in 1936 and four purchases were made, and in 1937, eight securities were sold or called for payment and eight purchases were made, and one exchange was effected. These shiftings of securities constituted a very small percentage of his entire holdings, and were not made for profit, but to conserve investments and get interest and dividends therefrom. In 1936 he received approximately $32,000 taxable interest and $65,000 nontaxable interest, and in 1937 his taxable interest was approximately $29,000 and his nontaxable interest $53,000. His investment activities were largely in long term securities, with a view to security and interest and dividend earnings.

Petitioner contends that, as he managed the trusts and conserved the estate for the remaindermen, he was engaged in trade or business. He received the royalty proceeds from time to time as paid, it is true, and kept a separate account of the investments belonging to the remaindermen, but as life tenant, entitled to their use and benefit and all the gains and profits therefrom, such management activities were in his own behalf and did not constitute carrying on a trade or business under the applicable revenue act. An impairment of the remaindermen's assets would correspondingly reduce his own income, as all the gains and profits therefrom were his personal income and he was interested in conserving it and making it yield as high returns as possible. In the cases above cited the taxpayers likewise managed and conserved the property involved and it was held that in so doing they were not engaged in carrying on a trade or business.

The association dues in the amount of $58.91 and business service in the amount of $58 are not shown to be necessary expense in connection with his business of farm management. These items should be eliminated from 1936 and 1937 deductions. They do not appear itemized as such in his 1937 return but, as we understand the evidence, expenditures were made for these purposes in 1937 and are reflected in the increased amount of miscellaneous office expenses in that year over that of 1936. Eliminating the sum of these two items, $116.91 for both years, and the $396.25 legal expense for 1937, which, petitioner concedes was improperly deducted, leaves total expenses for 1936 of $2,940.96 and for 1937 of $3,050.09 which should be allocated between business and personal expenses of the respective years.

We have found as a fact, based on the evidence in the record and the facts and circumstances deducible therefrom, that approximately

75 percent of petitioner's time and activity was devoted to his farming operations and that percentage of the above amounts should be allocated to business expense, and the remainder should be disallowed as a deduction in each of the years. In redetermining the deficiency for 1936 effect should be given to the stipulation of the parties eliminating $728 from dividend income of that year.

*Decision will be entered under Rule 50.*