Henry E. Sage, Petitioner, v. Commissioner of Internal Revenue, Respondent.

Docket No. 22349.   Promulgated September 25, 1950.

Harold E. Mitchell, Esq., for the petitioner.
W. C. W. Haynes, Esq., for the respondent.

300

OPINION.

Murdock, *Judge:* No question about the amount of income and deductions of the petitioner for 1941 is involved in this proceeding. The Commissioner concedes that the petitioner was entitled for that year to a deduction of $70,750 for worthless debts and that a net loss resulted. The only question for decision is whether that deduction was attributable to the operation of a trade or business regularly carried on by the taxpayer in 1941. Section 122 (d) (5). If it was, then the petitioner is entitled to the net operating loss carry-over for which he contends.

The petitioner has outlined many separate activities in which he participated from the time he was graduated from college until about 1946. There is testimony that he considered additional proposals which were brought to him during that time and that he was known as a person to whom such proposals might be brought profitably. Some of his activities may appear trivial and it may be inappropriate to fit some of the uses to which he put his time or money or both into the pattern of any business regularly carried on by him. But even if some are disregarded, enough are left to show that he was regularly carrying on a business. There may be difficulty or difference of opinion in defining that business properly, but it existed and was apparent.

The petitioner was constantly looking for opportunities for the use

of his money and time. Those which he found were many and varied. Some proved to be profitable, but most did not. Still the petitioner persisted and a consistent course of action appears. The loans to Revenue Development Corporation were like his aid to or investment in a number of other business ventures—each was accompanied by activity of the petitioner in the venture. This is not a case, like *Higgins* v. *Commissioner*, 312 U. S. 212, of a wealthy man claiming that the investing and reinvesting of a large fortune in marketable securities constitutes carrying on a business. The petitioner, no doubt, did some investing and reinvesting of his funds in marketable securities but he does not refer to that part of his activities as a basis for his claim here. He mentions only ventures of a different character in which he assumed greater risks and in which he actually participated, or hoped to participate through personal services. He was not a salaried officer as was the petitioner in *Samuel Lanski*, 34 B. T. A. 1019. He did not merely invest his money but used his time and energy to make the venture succeed. He did that sort of thing with such frequency and regularity that it amounted to a regular business carried on by him. The working assets of his business were his money and his personal services. He used them consistently and repeatedly. If one venture was successful, he continued with it, but if it failed, he dropped it. He continued to look for other opportunities. His business was not merely that of a particular venture. Cf. *Burnet* v. *Clark*, 287 U. S. 410. He was not a passive investor. The Revenue Development Corporation venture was not an isolated transaction but was a part of his regular business and the loss from that venture was incurred in the operation of a business regularly carried on by him. Cf. *Washburn* v. *Commissioner*, 51 Fed. (2d) 949; *T. I. Crane*, 17 B. T. A. 720.

Counsel for the respondent, at the beginning of the hearing, said that the issue in regard to the earned income credit is "whether the petitioner actually did render his services during the year 1942 to the Modern Tools Corporation such as would entitle him to an earned income credit under Section [25 (a) (3) and (4) (A)] of the Internal Revenue Code." The evidence shows that the petitioner actually rendered services to the Modern Tools partnership during 1942 sufficient to entitle him to the earned income credit which he claims. He devoted more time than usual to the affairs of that business during the first four months of 1942, and even after he went into the Air Corps in May 1942 he continued to keep in touch with and to render valuable services to that business. He conferred with his partner on a number of occasions, he corresponded with him, and in other ways continued to serve the business during the last 8 months of 1942.

*Decision will be entered under Rule 50.*