## COMMISSIONER OF INTERNAL REVENUE v. SMITH.

### No. 78, Docket 22397.

United States Court of Appeals
Second Circuit.

Argued Feb. 3, 1953.

Decided April 10, 1953.

Frederic G. Rita, Washington, D. C. (Ellis N. Slack, Acting Asst. Atty. Gen., and Walter Akerman, Jr., Sp. Asst. to the Atty. Gen., on the brief), for petitioner.

Robert J. Lansdowne, Buffalo, N. Y., for respondent.

Before SWAN, Chief Judge, and CHASE and CLARK, Circuit Judges.

CLARK, Circuit Judge.

In this case the taxpayer Weldon D. Smith sought restoration of a deduction of $38,220 in his income tax return for 1945 which the Commissioner had disallowed. The taxpayer claimed this deduction as a business debt which became worthless during the year as authorized by I.R.C. § 23 (k) (1), 26 U.S.C. § 23(k) (1). The Commissioner challenged the deduction on several grounds. A majority of the Tax Court sustained the taxpayer's claim in an opinion by Judge Rice, 17 T.C. 135. Six of the judges dissented, however, Judge Disney writing a dissenting opinion in which four of his colleagues concurred. The Commissioner now petitions for review, contending that the amount in question is a non-business debt and hence is only a loss of a capital asset within the more limited deductibility of I.R.C. § 23(k) (4). The sole question therefore is whether this worthless debt

arose from a trade or business in which the taxpayer was engaged.

A summary of the pertinent findings of fact by the Tax Court will suffice here. Respondent, a resident of Buffalo, N. Y., became interested in 1936 in Llenroc Farm, located on the Canadian side of the Niagara River and then operated as a dairy farm and for the raising of prize cattle by the Houck family—a mother and three sons. The Houcks sought someone to assume business management of the farm; and accordingly respondent joined them in January, 1937, in forming a Canadian corporation—Llenroc Farms, Ltd.—of which respondent became treasurer and general manager in addition to being a 20 per cent stockholder. In his managerial capacity, respondent supervised such matters as personnel, purchasing, seeding plans, and crop gathering, attending to these activities in the evenings and on Saturdays and Sundays. Since the new corporation displayed a persistent, if disheartening, propensity to sustain operating losses, respondent extended to it numerous loans which, by 1945, totalled $38,220. In that year the corporation filed a general assignment of its assets for the benefit of creditors, rendering worthless the debt respondent now seeks to deduct.

Aside from this agrarian venture, respondent was interested at one time or another in numerous other business enterprises and had investigated possibilities of investing in many more. Until January 1, 1945, his regular work day was apparently spent at the offices of Adams, Meldrum & Anderson Co., a Buffalo department store, of which he had been general manager for the preceding ten years, as well as a substantial stockholder. He had also lent money to this company by leaving some of his earnings with it, collecting 6 per cent interest thereon. Another enterprise in which respondent was interested was Adam, Meldrum & Anderson Cleaning Corp. (not connected with the department store) in which he held 49 per cent of the stock and served as an officer and director until the business was sold in 1944 or 1945; here, too, he left some of the salary credited to him with the corporation. In addition, respondent was a stockholder and director of Adam, Meldrum & Anderson State Bank and of Central Cleaning Plant, both of which merely involved attending board meetings. His other business ventures consisted of a partnership with his brother operating a garage in whose management he participated and to which he lent money; ownership and management of a business building in Buffalo; and, subsequent to 1945, serving as president and manager of the Oliver Gear Works, of which he was a 99 per cent stockholder and where he also left part of his salary to collect interest. Neither the Tax Court's findings nor the evidence upon which they rest indicate explicitly the extent to which these businesses occupied respondent's time and attention during 1945. The majority of the Tax Court found, however, that "Petitioner [respondent here] was in the business of giving financial aid and personal services to business ventures and, therefore, the $38,220 represented a bad debt which arose from a business regularly engaged in by petitioner which became worthless in 1945."

Whether a particular loss or expense is incurred in a taxpayer's trade or business is a question of fact in each particular case. Higgins v. C. I. R., 312 U.S. 212, 61 S.Ct. 475, 85 L.Ed. 783; Treas. Reg. 111, § 29.23(k)-6. But insofar as this determination involves interpretation of the statutory language, it raises an issue of law on which the Tax Court's decision is subject to review here. Washburn v. C. I. R., 8 Cir., 51 F.2d 949, 951. In the instant case we think the court below employed an erroneous view of the applicable Code provisions—§§ 23(k) (1) and 23(k) (4)—in arriving at its ultimate finding that respondent's bad debt loss was incurred in his trade or business.

Although Congress has never defined the term "trade or business," it is clear that this concept as used in § 23(k) does not encompass all activities engaged in for profit. The nature and congressional history of the more restricted meaning of "trade or business" is carefully analyzed by Judge Disney in his able dissent in the Tax Court and we need only allude to it briefly here. When in 1942 Congress amended § 23(k) to pro-

vide for different treatment of nonbusiness bad debts from that accorded such losses when incurred in a trade or business, the committee reports in both houses stated that the determination whether a debt is incurred in a trade or business "is substantially the same as that which is made for the purpose of ascertaining whether a loss from the type of transaction covered by section 23(e) is 'incurred in trade or business' under paragraph (1) of that section." 1942–2 Cum. Bull. 573. Section 23(e), dealing in general with losses sustained by individuals, explicitly establishes a distinction between losses incurred in trade or business and those stemming from "any transaction entered into for profit, though not connected with the trade or business." With this guide to the interpretation of § 23(k), it becomes apparent that Congress did not adopt the broad definition of "business" in Flint v. Stone Tracy Co., 220 U.S. 107, 171, 31 S.Ct. 342, 357, 55 L.Ed. 389, on which respondent relies. The Court there said: " 'Business' is a very comprehensive term and embraces everything about which a person can be employed. Black's Law Dict. 158, citing People ex rel. Hoyt v. Tax Com'rs, 23 N.Y. 242, 244. 'That which occupies the time, attention, and labor of men for the purpose of a livelihood or profit.' 1 Bouv. Law Dict. [Rawles Third Revision] p. 273." The Flint definition was subsequently rejected by the Supreme Court in interpreting the term "trade or business" as used in I. R. C. § 23(a) providing for deduction of ordinary and necessary expenses incurred in carrying on a trade or business. Higgins v. C. I. R., supra. We deem the definition equally inapplicable here.

The cases interpreting the statutory phrase in particular situations, of course do not chart its precise limits, but they do lead us to the conclusion that in the present case respondent's bad debt loss was not incurred in any trade or business. The full-time management of one's investments does not constitute a trade or business. Higgins v. C. I. R., supra. Nor does serving as an officer of a corporation of which the taxpayer is a stockholder and creditor. Van Dyke v. C. I. R., 23 B.T.A. 946, affirmed per curiam, 9 Cir., 63 F.2d 1020, affirmed per curiam, Van Dyke v. Helvering, 291 U.S. 642, 54 S.Ct. 437, 78 L. Ed. 1040; see McGinn v. C. I. R., 9 Cir., 76 F.2d 680, 681, 99 A.L.R. 564. Affirmance of the Van Dyke case in both the court of appeals and the Supreme Court was based on the authority of Burnet v. Clark, 287 U.S. 410, 53 S.Ct. 207, 77 L.Ed. 397, and Dalton v. Bowers, 287 U.S. 404, 53 S.Ct. 205, 77 L.Ed. 389. The Clark case held that an officer and majority stockholder of a corporation could not treat the loss sustained by endorsing the corporation's notes to protect his investment as incurred in a trade or business. Respondent's activities in the case at bar were essentially similar to those of the taxpayer in the Clark case, except that respondent here was interested as an investor, manager, and creditor in a number of business enterprises. But since each of these activities separately does not constitute a business, we cannot see how a combination of them spread over various businesses can alter the result. Of course, if respondent were regularly engaged in lending money to business enterprises, bad debt losses resulting therefrom would be incurred in his business. But respondent himself testified that he was never in the money lending business, and the other evidence in the record supports this conclusion.

Accordingly, the decision of the Tax Court is reversed for recomputation of the tax in accordance with this opinion.