**Max HIXON and Margaret Hixon, Petitioners-Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

**No. 156, Docket 24261.**

United States Court of Appeals Second Circuit.

Argued March 4, 1958.

Decided March 25, 1958.

Eugene O. Cobert, New York City (Liebowitz, Cobert & Deixel, New York City, on the brief), for petitioners-appellants.

Charles B. E. Freeman, Atty., Dept. of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson and Robert N. Anderson, Attys., Dept. of Justice, Washington, D. C. on the brief), for respondent-appellee.

Before LUMBARD, WATERMAN and MOORE, Circuit Judges.

PER CURIAM.

The question for decision is whether the findings and opinion of the Tax Court, entered on April 30, 1956, holding that the taxpayer Max Hixon had failed to sustain the burden of showing that he was in the business of gambling, and that he had sustained gambling losses in the year 1948, are clearly erroneous. As the findings of the Tax Court are not clearly erroneous and are, in fact, well supported by the undisputed evidence, we affirm the decision.

During the taxable year 1948, and for some years prior, the taxpayer operated a printing business under the name of Real Press in New York City. He was also a partner in a business operated under the name of Vocalon Institute.

On his 1948 income tax return, filed jointly with his wife, the taxpayer reported his gross profit from his printing business and deducted the various expenses attributable to such business in arriving at his "adjusted gross income."

Although the taxpayer received gambling winnings in 1948 of $11,282.74 he did not include this as income, nor did he report any of his alleged losses on his 1948 return. In computing "Net Income" for 1948, the taxpayer elected to take the standard deduction provided in § 23(aa) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 23(aa).

The undisputed facts show that the taxpayer turned over his gambling winnings to his bookkeeper who deposited the monies in the Real Press bank account. The resulting credits during 1948 totaled $11,282.74. While the taxpayer claimed withdrawals in excess of that amount to pay gambling losses, he kept no records of the amounts or to whom they were paid. He claims that 57 checks drawn on the Real Press bank account were in payment of losses but most of the checks were made out to "Cash" and were endorsed by unknown persons. The checks were drawn on the same account which the taxpayer used to pay his personal living expenses and there was no specific identification of the nature of any of these checks which were claimed to represent payment of gambling losses. Even the taxpayer's counsel conceded at the hearing that he was unable to determine how much the taxpayer won or lost from gambling.

The taxpayer does not now contend that he may set off his losses against his winnings pursuant to §§ 21 and 23 (h) to reach net income. He maintains, however, that he had considerable gambling losses in 1948, that he was in the business of gambling during that year, and that he therefore may deduct losses to the extent of his winnings as a business expense under § 22(n). The Tax Court sustained the Commissioner's inclusion of the $11,282.74 gambling gains in the taxpayer's taxable income and his disallowance of the alleged gambling losses. It held that the taxpayer failed to prove that he did not realize unreported income from gambling in 1948 in that amount, and that he failed to establish that he was in the business of gambling during that year.

Whether the taxpayer was in the business of gambling and whether he suffered losses were questions of fact for determination by the Tax Court. Higgins v. Commissioner, 1941, 312 U.S. 212, 61 S.Ct. 475, 85 L.Ed. 783; Commissioner v. Smith, 2 Cir., 1953, 203 F.2d 310, certiorari denied 346 U.S. 816, 74 S.Ct. 27, 98 L.Ed. 343. The record amply supports the findings of the Tax Court adverse to the claims of the taxpayer.

For these reasons the findings and decision of the Tax Court are affirmed.