L. B. MAYTAG, Jr., and Lucretia D. Maytag

v.

UNITED STATES.

No. 348-57.

United States Court of Claims.
May 3, 1961.

Whitaker, J., dissented.

Claude M. Maer, Jr., Denver, Colo., for plaintiffs. James L. White, New York City, was on the briefs.

John F. Palmer, Washington, D. C., with whom was Asst. Atty. Gen., Louis F. Oberdorfer, Washington, D. C., for defendant. James P. Garland, Lyle M. Turner and Harold S. Larsen, Washington, D. C., were on the briefs.

MADDEN, Judge.

The plaintiffs seek in this suit to recover $22,406.06 of the income tax which was collected from them for the year 1952. Their claim for refund was timely filed, and this suit was timely brought. The plaintiff Lucretia D. Maytag signed the income tax return with her husband L. B. Maytag, Jr., but all of the activities with which this suit is concerned were those of L. B. Maytag, Jr., and the word plaintiff as used hereinafter will refer to him alone.

The ground on which the plaintiff bases his claim is that he had a bad debt loss which was deductible in full from his 1952 income, in computing his tax. The occurrence and the amount of the loss are undisputed. The principal dispute is as to whether the loss debt was a "business debt" or a "non-business debt." If it was the former, the plaintiff is entitled to recover. The Government says it was a non-business debt. The Government makes another contention which will be discussed hereinafter.

Section 23(k) (1) of the Internal Revenue Code of 1939, as amended, 26 U.S.C. (1952 ed.) § 23(k) (1) provides that in computing net income there shall be allowed as deductions "Debts which become worthless within the taxable year;" but goes on to say that the foregoing shall not apply, in the case of an individual tax payer, with respect to a non-business debt, as defined in paragraph (4) of subsection (k) of section 23.

Paragraph (4) says, in effect, that if a non-business debt becomes worthless within the taxable year the loss shall be treated as a short-term capital loss is treated. That means that it cannot be deducted from net income except to a very limited extent but can be set off against certain kinds of capital gains, if the tax payer has such gains. See 26 U.S.C. (1952 ed.) § 117(j). Paragraph (4) then says:

"The term 'non-business debt' means a debt * * * other than a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business."

We must, then, determine whether the debt here in question, and its uncollectibility, were incurred in the plaintiff's trade or business.

The uncollectible debt was the debt of Maytag-Waynick, Inc., a corporation to which the plaintiff had made advances of $205,000 and which had repaid only $3,600, the balance of $201,400 being admittedly uncollectible. The plaintiff says that Maytag-Waynick, Inc., was one feature of his general business of carrying

on activities connected with the airplane industry.

Since 1947, when he was 21 years old, the plaintiff has been engaged solely in business connected with aviation. In 1948 he purchased the assets and business of Midwestern Air Service, and carried on the business as a sole proprietorship until 1951. The extensive aviation-connected activities of the plaintiff in this individual business are listed in finding 2. In January 1951 the plaintiff incorporated the business as Maytag Aircraft Corporation. Until 1956 he owned all but 104 of its 5,698 shares. His reasons for incorporating the business were natural ones: the avoidance of personal liability in a hazardous business; the simplification of records; the possibility of getting additional capital from the outside if he should obtain a certain contract with the United States Air Force.

When Maytag Aircraft Corporation was formed the plaintiff was still devoting all of his time to its activities. During the years 1951 to 1956 the plaintiff caused four other corporations to be formed. Their nature is described in finding 8. Their activities were exclusively in the field of aviation and aviation equipment. In the conduct of the business of the several corporations the plaintiff made the decisions and personally exercised overall direction over the enterprises.

In 1951 the plaintiff and Earl Waynick organized a Colorado corporation, Maytag-Waynick Inc. for the purpose of manufacturing a honeycomb-like product with an aluminum skin to be used in constructing, overhauling and repairing airplane hulls, fuel tanks, wings, stabilizers and struts. The plaintiff owned two-thirds of the stock of the corporation, and loaned Waynick the money to buy his one-third of the stock. The plaintiff devoted about 30 percent of his time to this corporation. Waynick was president. Because of operating losses and disagreements between the plaintiff and Waynick, Waynick resigned in 1952 and the plaintiff became the sole owner of the corporation's stock. Later in 1952

Philip C. Cole bought some of the stock from the plaintiff. The plaintiff advanced large amounts to the corporation, taking the corporation's notes. The business failed and the notes became worthless in 1953 or 1954. The carryback provisions of section 122(b) (1) (B) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 122(b) (1) (B), permit the plaintiff's 1953 and 1954 losses to be carried back to 1952, the tax year in question in this case.

The details of the activities of the plaintiff, and of the corporations which he caused to be formed, are given in our findings, and we do not repeat them here. They show, we think, that the plaintiff's business was a myriad of activities, all directly connected with aviation, which could be carried on as relatively small business enterprises without involving outside capital in large amounts. The plaintiff, for reasons satisfactory to him, carried on these enterprises in corporate form. He was not involved in these corporations merely as an investor. He worked in them, made the important decisions in them, put up the money to enable them to operate. The plaintiff was a very busy man, and what he was busy at was the activities of these enterprises. They were all within the same general field, that of aviation. If he had carried on all these activities as an individual proprietor, as indeed he did carry on most of them for several years, he could without question have included the successes and failures of all the separate branches of his business in his computation of his income. Our conclusion is that these activities were his business, and that the bad debt which he seeks to deduct was a business bad debt.

The decisions in which this question has been considered are numerous, and each case involves its own peculiar facts. Treasury Regulations 118, applicable to the Internal Revenue Code of 1939, says, in section 39.23(k)–6(a) and (b) entitled Non-business bad debts:

"(a) * * * The question whether the debt is one the loss from the worthlessness of which is

incurred in the taxpayer's trade or business is a question of fact in each particular case. * * *

"(b) The character of the debt for this purpose * * * is to be determined rather by the relation which the loss resulting from the debt's becoming worthless bears to the trade or business of the taxpayer. If that relation is a proximate one in the conduct of the trade or business in which the taxpayer is engaged at the time the debt becomes worthless, the debt is not a non-business debt for the purposes of this section."

The court decisions are not very helpful, because of the differences in facts on which they are based. The Government quotes the dissenting opinion of Judge Disney in Smith v. Commissioner, 17 T.C. 135, 147–149, which dissenting opinon was concurred in by several other judges. The basis of that opinion was that the majority of the court had included within the "business bad debt" category a situation in which the bad debt had merely been acquired in a transaction "entered into for profit" and had thus blurred a distinction which Congress had quite emphatically drawn. The view of the dissenters prevailed in the Court of Appeals. Commissioner of Internal Revenue v. Smith, 2 Cir., 203 F.2d 310, certiorari denied, 346 U.S. 816, 74 S.Ct. 27, 98 L.Ed. 1073. Of course one is not engaged in a business simply because he has invested money in it for the purpose of making a profit, and if he lends money to it in an attempt to protect his investment, and loses the money, he has not lost the money in the business in which he is engaged.

The dissenters in the Tax Court, and the Court of Appeals, in the Smith case, supra, and the Government in the instant case, rely on Higgins v. Commissioner, 312 U.S. 212, 61 S.Ct. 475, 85 L.Ed. 783. In that case the taxpayer sought to deduct as "business" expenses the expenses incurred in caring for his stocks and bonds. The Court said, 312 U.S. at page 214, 61 S.Ct. at page 476:

"Petitioner did not participate directly or indirectly in the management of the corporations in which he held stocks or bonds."

This case of a passive investor in the securities of enterprises which he had not formed and did not control or work in has no resemblance to that of the plaintiff. No one could say, in reason, that the plaintiff was not engaged in business. But he did nothing other than manage and work in his corporations. It would seem to follow that the management and work was the business in which he was engaged, since that was the only thing he did. It would be hard to imagine a loss more "proximate" to that business activity than the uncollectibility of a loan made to it to promote its wellbeing.

What the Government urges, as we see it, is that if one embodies his business in the corporate forms, he may *in fact* spend his days in overalls working at a bench in his factory, but *in law* he will be regarded as engaged only in cashing dividend checks and clipping coupons. We see no reason to engage in such makebelieve. If the lawmakers had intended to draw the line at the corporate form of business, they would have said so. If they had said anything susceptible of being interpreted to mean that, the Treasury in its regulations would have said so.

The Government complains that some of the corporate activities to which we have pointed as indications of the scope of the plaintiff's aviation-connected activities occurred after 1954, and points out that the debt of Maytag-Waynick Inc. to the plaintiff became worthless not later than 1954. In determining the nature of the plaintiff's relation to aviation in the years 1952, 1953 and 1954, we think it is relevant to know, not only what the plaintiff was doing in that regard in those years, but what he was doing in that regard in the years immediately preceding and following those years. The more extended continuity is enlightening, and we see no reason to draw the curtain against parts of it. See

Sinclair Refining Co. v. Jenkins Petroleum Process Co., 289 U.S. 689, 698, 53 S.Ct. 736, 77 L.Ed. 1449.

The Government urges that the advances made by the plaintiff to Maytag-Waynick were not loans but were contributions to capital, and therefore the plaintiff's loss of the money could not be considered a bad-debt loss. The advances took the form of loans, negotiable notes being issued for each advance of money. They were recorded on the corporation's books and on the plaintiff's personal books as loans. The debts to the plaintiff were never formally subordinated to those of other creditors, though in fact the plaintiff did not insist on a pro rata distribution with other creditors, because he was so closely identified with the corporation that he did not think it would be honorable to take a part of the small amount available to the creditors. The capitalization was not "thin", the ratio of debt to equity being only slightly more than $2\frac{1}{2}$ to 1. The corporation was, in our opinion, indebted to the plaintiff.

The plaintiff is entitled to recover $22,-406.06, with interest as provided by law.

It is so ordered.

JONES, Chief Judge, and DURFEE and LARAMORE, Judges, concur.

WHITAKER, Judge (dissenting).

Plaintiff chose to carry on his activities through the instrumentalities of several corporations. He created new persons to carry on his work for him. The particular person with whose business activities we are concerned in this case was not plaintiff, in the eyes of the law, but a different person, separate and distinct from plaintiff. However difficult it may be, rationally, to divorce one entity from the other, the law has created the fiction of two entities, separate one from the other.

Having availed himself of this fiction, plaintiff is entitled to its advantages, and is subject to all its disadvantages. Hence, the loan by plaintiff to the corporation was from one person to another person.

But, can we say that the loan was made in the carrying on of *plaintiff's* business? It was made to assist the corporation in carrying on *its* business, *not plaintiff's.* Since plaintiff elected not to carry on the business himself, but to have another person do it for him, then his loan to this person was a loan to and for the benefit of someone other than himself.

It was a loan to his agent, it is true, but it was one for which the agent was liable to plaintiff, because it was a loan in carrying on the agent's business. Had it been an advance by plaintiff to his agent to carry on plaintiff's business, the agent would not have been obligated to repay it.

Consequently, the loan could be taken into account as a bad debt incurred in plaintiff's business only if we completely disregard the separate corporate entity. Plaintiff, by his own creation of the corporation, elected to have it treated as a separate entity. So treating it, its business was not plaintiff's business.

This is not an easy case, but I think plaintiff must remain on the horns of the dilemma he himself has created.