WHIPPLE ET UX. *v.* COMMISSIONER OF
INTERNAL REVENUE.

No. 305.   Argued March 26–27, 1963.—Decided May 13, 1963.

*Charles Dillingham* argued the cause for petitioners. With him on the briefs were *Ben H. Schleider, Jr., John S. Brunson* and *A. C. Lesher, Jr.*

*Solicitor General Cox* argued the cause for respondent. With him on the brief were *Assistant Attorney General Oberdorfer* and *Robert N. Anderson.*

MR. JUSTICE WHITE delivered the opinion of the Court.

Section 23 (k)(1) of the Internal Revenue Code of 1939 [1] provides for the deduction in full of worthless debts other than nonbusiness bad debts while § 23 (k)(4) restricts nonbusiness bad debts to the treatment accorded losses on the sale of short-term capital assets.[2] The statute defines a nonbusiness bad debt in part as "a debt . . . other than a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or busi-

---

[1] The 1954 Code provision, § 166, is substantially identical to that in the 1939 Code with respect to the problem here. Preceding the enactment of the 1954 Code, there were statements from witnesses urging an express provision for the full bad debt deduction in circumstances such as these to overturn contrary lower court decisions like *Commissioner* v. *Smith,* 203 F. 2d 310 (C. A. 2d Cir.), Hearings before the House Committee on Ways and Means on Forty Topics Pertaining to the General Revision of the Internal Revenue Code, 83d Cong., 1st Sess. (pt. 3), 1519–1525, and bills introduced for that purpose, H. R. 3165 and H. R. 4853, 83d Cong., 1st Sess. The provision finally enacted, however, was one without these suggested modifications.

[2] In general, short-term capital losses are deductible only to the extent of the gains from the sale or exchange of capital assets, plus the taxable income of the taxpayer or $1,000, whichever is smaller. § 117 (d)(2). See also § 1211 (b), 1954 Code.

ness." § 23 (k)(4). The question before us is whether petitioner's activities in connection with several corporations in which he holds controlling interests can themselves be characterized as a trade or business so as to permit a debt owed by one of the corporations to him to be treated within the general rule of § 23 (k)(1) as a "business" rather than a "nonbusiness" bad debt.

Prior to 1941 petitioner was a construction superintendent and an estimator for a lumber company but during that year and over the next several ones he was instrumental in forming and was a member of a series of partnerships engaged in the construction or construction supply business. In 1949 and 1950 he was an original incorporator of seven corporations, some of which were successors to the partnerships, and in 1951 he sold his interest in the corporations along with his equity in five others in the rental and construction business, the profit on the sales being reported as long-term capital gains. In 1951 and 1952 he formed eight new corporations, one of which was Mission Orange Bottling Co. of Lubbock, Inc., bought the stock of a corporation known as Mason Root Beer [3] and acquired an interest in a related vending machine business. From 1951 to 1953 he also bought and sold land, acquired and disposed of a restaurant and participated in several oil ventures.

On April 25, 1951, petitioner secured a franchise from Mission Dry Corporation entitling him to produce, bottle, distribute and sell Mission beverages in various counties in Texas. Two days later he purchased the assets of a sole proprietorship in the bottling business and conducted that business pursuant to his franchise as a sole pro-

---

[3] This corporation owned a franchise to distribute Mason root beer which petitioner bottled at the Mission Orange plant in Lubbock. Mason Root Beer failed in 1953 and petitioner's return for that year, the same one as involved in this suit, reflects a $3,300 loss on the stock and a $53.33 nonbusiness bad debt from that corporation.

prietorship. On July 1, 1951, though retaining the franchise in his own name, he sold the bottling equipment to Mission Orange Bottling Co. of Lubbock, Inc., a corporation organized by petitioner as mentioned, of which he owned approximately 80% of the shares outstanding.[4] In 1952 he purchased land in Lubbock and erected a bottling plant thereon at a cost of $43,601 and then leased the plant to Mission Orange for a 10-year term at a prescribed rental. Depreciation was taken on the new bottling plant on petitioner's individual tax returns for 1952 and 1953.

Petitioner made sizable cash advances to Mission Orange in 1952 and 1953, and on December 1, 1953, the balance due him, including $25,502.50 still owing from his sale of the bottling assets to the corporation in July 1951, totaled $79,489.76. On December 15, 1953, petitioner advanced to Mission Orange an additional $48,000 to pay general creditors and on the same day received a transfer of the assets of the corporation with a book value of $70,414.66. The net amount owing to petitioner ultimately totaled $56,975.10, which debt became worthless in 1953 and is in issue here. During 1951, 1952 and 1953 Mission Orange made no payments of interest, rent or salary to petitioner although he did receive such income from some of his other corporations.[5]

Petitioner deducted the $56,975.10 debt due from Mission Orange as a business bad debt in computing his 1953

---

[4] At the time Mission Orange was organized petitioner was issued 88% of the outstanding shares. The charter was amended in December of 1952 to authorize additional capital stock which, when subsequently issued, reduced his interest in the corporation to 77%. Sometime before the end of 1953, petitioner increased his holdings to about 79.5% of the outstanding shares.

[5] He collected interest totaling $1,680.15 in 1951, $2,285.35 in 1952 and $1,747.59 in 1953; rental income of $15,570.78 in 1952 and $12,225.19 in 1953; and salaries totaling $29,400 for 1952 and $33,450 for 1953.

taxable income. The Commissioner, claiming the debt
was a nonbusiness bad debt, assessed deficiencies. The
Tax Court, after determining that petitioner in 1953 was
not in the business of organizing, promoting, managing or
financing corporations, of bottling soft drinks or of general
financing and money lending, sustained the deficiencies.
A divided Court of Appeals affirmed, 301 F. 2d
108, and upon a claim of conflict [6] among the Courts of
Appeals, we granted certiorari. 371 U. S. 875.

## I.

The concept of engaging in a trade or business as distinguished
from other activities pursued for profit is not
new to the tax laws. As early as 1916, Congress, by providing
for the deduction of losses incurred in a trade or
business separately from those sustained in other transactions
entered into for profit, § 5, Revenue Act of 1916,
c. 463, 39 Stat. 756, distinguished the broad range of
income or profit producing activities from those satisfying
the narrow category of trade or business. This pattern
has been followed elsewhere in the Code. See, e. g.,
§ 23 (a)(1) and (2) (ordinary and necessary expenses);
§ 23 (e)(1) and (2) (losses); § 23 (1)(1) and (2) (depreciation);
§ 122 (d)(5) (net operating loss deduction).
It is not surprising, therefore, that we approach the problem
of applying that term here with much writing upon
the slate.

In *Burnet* v. *Clark,* 287 U. S. 410 (1932), the long-time
president and principal stockholder of a corporation in the
dredging business endorsed notes for the company which
he was forced to pay. These amounts were deductible by
him in the current year under the then existing law, but
to carry over the loss to later years it was necessary for
it to have resulted from the operation of a trade or busi-

---

[6] See note 10, *infra.*

ness regularly carried on by the taxpayer. The Board of Tax Appeals denied the carry-over but the Court of Appeals for the District of Columbia held otherwise on the grounds that the taxpayer devoted all of his time and energies to carrying on the business of dredging and that he was compelled by circumstances to endorse the company's notes in order to supply it with operating funds.[7] This Court in turn reversed and reinstated the judgment of the Board of Tax Appeals, since "[t]he respondent was employed as an officer of the corporation; the business which he conducted for it was not his own. . . . The unfortunate endorsements were no part of his ordinary business, but occasional transactions intended to preserve the value of his investment in capital shares. . . . A corporation and its stockholders are generally to be treated as separate entities." A similar case, *Dalton* v. *Bowers*, 287 U. S. 404, decided the same day, applied the same principles.[8]

---

[7] The lower court relied in part upon the test of trade or business announced in *Washburn* v. *Commissioner*, 51 F. 2d 949, 953:

"A party may have investments in corporate stock, have no particular occupation, and live on the return of his investments. That would not constitute business under the statute in question. He may, however, take such an active part in the management of the enterprise in which he has investments as to amount to the carrying on of a business."

[8] *Dalton* v. *Bowers* involved a taxpayer, owning all the stock of the debtor corporation, who argued that his trade or business was carrying on a comprehensive enterprise of exploiting his own inventions through corporations organized for limited purposes and that these personal activities transcended the separate corporate entities. As in *Burnet*, however, these contentions were rejected.

"He treated [his corporation] as something apart from his ordinary affairs, accepted credits for salaries as an officer, claimed loss to himself because of loans to it which had become worthless, and caused it to make returns for taxation distinct from his own. Nothing indicates that he regarded the corporation as his agent with author-

A few years later, the same problem arose in another context. A taxpayer with large and diversified investment holdings, including a substantial but not controlling interest in the du Pont Company, obtained a block of stock of that corporation for distribution to its officers in order to increase their management efficiency. The taxpayer, as a result, became obligated to refund the annual dividends and taxes thereon and these amounts he sought to deduct as ordinary and necessary expenses paid or incurred in the carrying on of a trade or business pursuant to § 23 (a) of the Revenue Act of 1928. The Court, *Deputy* v. *du Pont,* 308 U. S. 488 (1940), assuming *arguendo* that the taxpayer's activities in investing and managing his estate were a trade or business, nevertheless denied the deduction because the transactions "had their origin in an effort by that company to increase the efficiency of its management" and "arose out of transactions which were intended to preserve his investment in the corporation . . . . The well established decisions of this Court do not permit any such blending of the corporation's business with the business of its stockholders." 308 U. S., at 494. Reliance was placed upon *Burnet* v. *Clark* and *Dalton* v. *Bowers, supra.*

The question assumed in *du Pont* was squarely up for decision in *Higgins* v. *Commissioner,* 312 U. S. 212 (1941). Here the taxpayer devoted his time and energies to managing a sizable portfolio of securities and sought to deduct his expenses incident thereto as incurred in a trade or business under § 23 (a). The Board of Tax Appeals, the Court of Appeals for the Second Circuit and this Court

---

ity to contract or act in his behalf. Ownership of all the stock is not enough to show that creation and management of the corporation was a part of his ordinary business. Certainly, under the general rule for tax purposes a corporation is an entity distinct from its stockholders . . . ." 287 U. S., at 410.

held that the evidence was insufficient to establish taxpayer's activities as those of carrying on a trade or business. "The petitioner merely kept records and collected interest and dividends from his securities, through managerial attention for his investments. No matter how large the estate or how continuous or extended the work required may be, such facts are not sufficient as a matter of law to permit the courts to reverse the decision of the Board." 312 U. S., at 218.

Such was the state of the cases in this Court when Congress, in 1942, amended the Internal Revenue Code in respects crucial to this case. In response to the *Higgins* case and to give relief to Higgins-type taxpayers, see H. R. Rep. No. 2333, 77th Cong., 2d Sess. 46, § 23 (a) was amended not by disturbing the Court's definition of "trade or business" but by following the pattern that had been established since 1916 of "[enlarging] the category of incomes with reference to which expenses were deductible," *McDonald* v. *Commissioner,* 323 U. S. 57, 62; *United States* v. *Gilmore,* 372 U. S. 39, 45, to include expenses incurred in the production of income.

At the same time, to remedy what it deemed the abuses of permitting any worthless debt to be fully deducted, as was the case prior to this time, see H. R. Rep. No. 2333, 77th Cong., 2d Sess. 45, Congress restricted the full deduction under § 23 (k) to bad debts incurred in the taxpayer's trade or business [9] and provided that "nonbusiness" bad

---

[9] "The character of the debt for this purpose is not controlled by the circumstances attending its creation or its subsequent acquisition by the taxpayer or by the use to which the borrowed funds are put by the recipient, but is to be determined rather by the relation which the loss resulting from the debt's becoming worthless bears to the trade or business of the taxpayer. If that relation is a proximate one in the conduct of the trade or business in which the taxpayer is engaged at the time the debt becomes worthless, the debt is not a nonbusiness debt for the purposes of this amendment." H. R. Rep. No. 2333, 77th Cong., 2d Sess. 77; S. Rep. No. 1631, 77th Cong., 2d

debts were to be deducted as short-term capital losses. Congress deliberately used the words "trade or business," terminology familiar to the tax laws, and the respective committees made it clear that the test of whether a debt is incurred in a trade or business "is substantially the same as that which is made for the purpose of ascertaining whether a loss from the type of transaction covered by section 23 (e) is 'incurred in trade or business' under paragraph (1) of that section." H. R. Rep. No. 2333, 77th Cong., 2d Sess. 76–77; S. Rep. No. 1631, 77th Cong., 2d Sess. 90. Section 23 (e)(1), of course, was a successor to the old § 5 of the Revenue Act of 1916 under which it had long been the rule to distinguish between activities in a trade or business and those undertaken for profit. The upshot was that Congress broadened § 23 (a) to reach income producing activities not amounting to a trade or business and conversely narrowed § 23 (k) to exclude bad debts arising from these same sources.

The 1942 amendment of § 23 (k), therefore, as the Court has already noted, *Putnam* v. *Commissioner,* 352 U. S. 82, 90–92, was intended to accomplish far more than to deny full deductibility to the worthless debts of family and friends. It was designed to make full deductibility of a bad debt turn upon its proximate connection with activities which the tax laws recognized as a trade or business, a concept which falls far short of reaching every income or profit making activity.

## II.

Petitioner, therefore, must demonstrate that he is engaged in a trade or business, and lying at the heart of his claim is the issue upon which the lower courts have divided and which brought the case here: That where a taxpayer

---

Sess. 90. Treasury Regulations 118, § 39.23 (k)–6 (b), adopts substantially this language of the Committee Reports as the test to be applied under § 23 (k).

furnishes regular services to one or many corporations, an independent trade or business of the taxpayer has been shown. But against the background of the 1942 amendments and the decisions of this Court in the *Dalton, Burnet, du Pont* and *Higgins* cases, petitioner's claim must be rejected.

Devoting one's time and energies to the affairs of a corporation is not of itself, and without more, a trade or business of the person so engaged. Though such activities may produce income, profit or gain in the form of dividends or enhancement in the value of an investment, this return is distinctive to the process of investing and is generated by the successful operation of the corporation's business as distinguished from the trade or business of the taxpayer himself. When the only return is that of an investor, the taxpayer has not satisfied his burden of demonstrating that he is engaged in a trade or business since investing is not a trade or business and the return to the taxpayer, though substantially the product of his services, legally arises not from his own trade or business but from that of the corporation. Even if the taxpayer demonstrates an independent trade or business of his own, care must be taken to distinguish bad debt losses arising from his own business and those actually arising from activities peculiar to an investor concerned with, and participating in, the conduct of the corporate business.

If full-time service to one corporation does not alone amount to a trade or business, which it does not, it is difficult to understand how the same service to many corporations would suffice. To be sure, the presence of more than one corporation might lend support to a finding that the taxpayer was engaged in a regular course of promoting corporations for a fee or commission; see Ballantine, Corporations (rev. ed. 1946), 102, or for a profit on their sale, see

*Giblin* v. *Commissioner,* 227 F. 2d 692 (C. A. 5th Cir.), but in such cases there is compensation other than the normal investor's return, income received directly for his own services rather than indirectly through the corporate enterprise, and the principles of *Burnet, Dalton, du Pont* and *Higgins* are therefore not offended. On the other hand, since the Tax Court found, and the petitioner does not dispute, that there was no intention here of developing the corporations as going businesses for sale to customers in the ordinary course, the case before us inexorably rests upon the claim that one who actively engages in serving his own corporations for the purpose of creating future income through those enterprises is in a trade or business. That argument is untenable in light of *Burnet, Dalton, du Pont* and *Higgins,* and we reject it.[10] Absent substantial additional evidence,[11] furnishing management and other services to corporations for a reward not different from that flowing to an investor in those corporations is not a trade or business under § 23 (k)(4). We are, therefore, fully in agreement with this aspect of the decision below.

## III.

With respect to the other claims by petitioner, we are unwilling to disturb the determinations of the Tax Court, affirmed by the Court of Appeals, that petitioner was not

[10] To the extent that they hold or contain statements to the contrary, we disapprove of such cases as *Maytag* v. *United States,* 153 Ct. Cl. 622, 289 F. 2d 647; *Mays* v. *Commissioner,* 272 F. 2d 788 (C. A. 6th Cir.); *Commissioner* v. *Stokes' Estate,* 200 F. 2d 637 (C. A. 3d Cir.); *Foss* v. *Commissioner,* 75 F. 2d 326 (C. A. 1st Cir.); *Washburn* v. *Commissioner,* 51 F. 2d 949 (C. A. 8th Cir.); *Sage* v. *Commissioner,* 15 T. C. 299; *Campbell* v. *Commissioner,* 11 T. C. 510; and *Cluett* v. *Commissioner,* 8 T. C. 1178.

[11] Compare *Maloney* v. *Spencer,* 172 F. 2d 638 (C. A. 9th Cir.), and *Dorminey* v. *Commissioner,* 26 T. C. 940.

engaged in the business of money lending, of financing corporations, of bottling soft drinks or of any combination of these since we cannot say they are clearly erroneous. See *Commissioner* v. *Duberstein,* 363 U. S. 278, 289–291. Nor need we consider or deal with those cases which hold that working as a corporate executive for a salary may be a trade or business. *E. g., Trent* v. *Commissioner,* 291 F. 2d 669 (C. A. 2d Cir.).[12] Petitioner made no such claim in either the Tax Court or the Court of Appeals and, in any event, the contention would be groundless on this record since it was not shown that he has collected a salary from Mission Orange or that he was owed one. Moreover, there is no proof (which might be difficult to furnish where the taxpayer is the sole or dominant stockholder) that the loan was necessary to keep his job or was otherwise proximately related to maintaining his trade or business as an employee. Compare *Trent* v. *Commissioner, supra.*

We are more concerned, however, with the evidence as to petitioner's position as the owner and lessor of the real estate and bottling plant in which Mission Orange did business. The United States does not dispute the fact that in this regard petitioner was engaged in a trade or business [13] but argues that the loss from the worthless debt was not proximately related to petitioner's real estate

---

[12] See under § 122 (net operating loss carry-over) *Folker* v. *Johnson,* 230 F. 2d 906 (C. A. 2d Cir.); *Overly* v. *Commissioner,* 243 F. 2d 576 (C. A. 3d Cir.); *Batzell* v. *Commissioner,* 266 F. 2d 371 (C. A. 4th Cir.); *Roberts* v. *Commissioner,* 258 F. 2d 634 (C. A. 5th Cir.); *Pierce* v. *United States,* 254 F. 2d 885 (C. A. 9th Cir.). But cf., *McGinn* v. *Commissioner,* 76 F. 2d 680 (C. A. 9th Cir.); *Hughes* v. *Commissioner,* 38 F. 2d 755 (C. A. 10th Cir.). See under § 23 (a) (1) (ordinary and necessary expenses of trade or business) *Schmidlapp* v. *Commissioner,* 96 F. 2d 680 (C. A. 2d Cir.); *Noland* v. *Commissioner,* 269 F. 2d 108, 111 (C. A. 4th Cir.).

[13] Although petitioner received no rental payments from Mission Orange, there was rent owing to him under the 10-year-lease agreement.

business. While the Tax Court and the Court of Appeals dealt separately with assertions relating to other phases of petitioner's case, we do not find that either court disposed of the possibility that the loan to Mission Orange, a tenant of petitioner, was incurred in petitioner's business of being a landlord. We take no position whatsoever on the merits of this matter but remand the case for further proceedings in the Tax Court.

*Vacated and remanded.*

MR. JUSTICE DOUGLAS dissents.