Harold Aisley and Adele B. Aisley v. Commissioner.
Aisley v. Commissioner
Docket Nos. 6542-66, 4845-68.
United States Tax Court
T.C. Memo 1970-63; 1970 Tax Ct. Memo LEXIS 296; 29 T.C.M. (CCH) 267; T.C.M. (RIA) 70063; March 16, 1970, filed Harold Aisley, pro se, 5021 Bellaire Ave., North Hollywood, Calif.Erwin L. Stuller, for the respondent. MULRONEY Memorandum Findings of Fact and Opinion MULRONEY, Judge: Respondent determined deficiencies in petitioners' income tax and addition thereto for the years and in the amounts as follows: Year
Deficiency
Addition to Tax§ 6651(a), I.R.C. 1954
1960
$3,934.24
1961
11,833.99
1962
22,238.84
1963
3,519.35
$92.85
1964
1,300.18
*297 Petitioners concede the addition to tax of $92.85 for failure to file a timely return for 1963. The issues are whether petitioners failed to report many items of income; whether they were entitled to deductions for claimed business use of home; whether they were entitled to deductions for claimed storm damage losses; whether they were entitled to a small business stock loss; whether they were entitled to deductions for a bad debt loss; whether they were entitled to a deduction for claimed partnership losses; whether they were entitled to deductions for legal and accounting fees they paid; and whether they were entitled to deductions for claimed investment expenses. Findings of Fact Petitioners are husband and wife. They lived in North Hollywood, California, at the time of the filing of the petitions in these consolidated cases. They filed their joint returns for the years in issue with the 268 district director of internal revenue, Los Angeles, California. Harold Aisley, who will sometimes be referred to as petitioner, was president, chairman of the board of directors, and controlling shareholder of Jensen Industries, a corporation engaged in the manufacture of steel *298 products used in the fields of home building, medicine, recreation and amusement. It had annual net sales of $1,500,000 to $2,300,000 and capital of approximately a million dollars. Petitioner and his wife were both salaried employees of the corporation. During the years involved the petitioners received annual combined salaries of $48,000 during 1960 through 1963 and $38,700 in 1964. Petitioners were initially represented, at the examination and conference level, by accountants and attorneys with respect to the deficiencies determined by respondent. Sometime before trial petitioners dismissed those who had represented them and the case was tried by the husband-petitioner, Harold Aisley, who was also the only witness. Respondent's notices of deficiency make numerous adjustments in all of the years involved. Petitioner, in his petition, asserts error with respect to each adjustment. The issues, as framed by the notice, the petitions, and the answers admit of some grouping. Issue 1. Additional income Findings of Fact In addition to their salaries stated above, the petitioners conceded receiving the following income from Jensen Industries not reported on their returns: Item
Year
Amount
Dividends
1960
$212.77
Dividends
1961
454.15
Dividends
1962
509.58
Director's fees
1960
250.00
Rent for home study
1960
300.00
Rent for home study
1961
300.00
Rent for home study
1962
300.00
Rent for home study
1963
300.00
Rent for building
1962
13,089.00
*299 Opinion At the trial petitioners admitted they received the additional unreported income in the form of dividends and director's fees from their corporation, Jensen Industries. They also admitted receiving $300 for each of the years 1960, 1961, 1962 and 1963 from Jensen Industries called "rent for home study" which was not reported. Petitioners seem to argue that they were right in not including the $300 rent for home study in income in the four years that it was paid because they maintained a study in their home which was used by them for the corporation's business. They contend such use would give them a deduction for business use of their home in excess of the $300 paid each year. This is all contention and argument with no substantiation, no supporting evidence, and no legal basis to support the position taken. Without further comment we hold the $300 received by petitioners as rent for home study in the years 1960, 1961, 1962 and 1963 constituted additional unreported taxable income for said years. Petitioners at the trial admitted receiving rent in the sum of $13,089 in the year 1962. Petitioner testified this had been inadvertently omitted; that it was three months' *300 rent for a building he owned that was used by his corporation; and that he sold the building in April 1962. Petitioner argued that the rent he received for the months of January, February and March 1962 in the total sum of $13,089 should be offset by depreciation for the three months that he owned the building in 1962 in the amount of $4,606 and the interest on the mortgage on the building that he paid in March of 1962 in the amount of $1,625. The claimed depreciation for his three month ownership of the building in 1962 is in accordance with the depreciation schedule used in his 1961 return. Petitioner's exhibit computed the claimed depreciation as follows: Depreciation 1946 E. 46th St. Against Rent Received Jan., Feb., Mar. 1962
Cost 7/1/61
$239,900.17
Rate Double Declining Bal.
Life 25 Yrs.
Prior Depreciation
9,596.01
Depreciation Basis 1/1/62
230,304.00
Depreciation Jan., Feb., Mar. 62
4,606.00
The 1961 income tax return shows a building acquired July 1, 1961 at a cost of $239,900.17 with depreciation taken (for 6 months' ownership in 1961) in the amount of $9,596.01. We are of the opinion petitioner is entitled to the claimed depreciation for his *301 3-month ownership in 1962. The claimed interest payment on the mortgage on the building is evidenced by petitioner's cancelled check to General American Life Insurance Company dated March 1, 1962 in the amount of $1,625. The check is marked "Loan ML 360595 Interest Only" 269 and the insurance company's records with respect to this numbered loan were introduced. Petitioner testified as to the mortgage and his payment of the interest. We think his payment of the interest in the amount stated was sufficiently established. While allowance of interest deduction as offsets against rent received may not be the proper method of reporting rent income, we feel in the special circumstances of this case the rent income adjustment here should be reduced by the amounts claimed for depreciation and interest payment which we feel are established by the evidence. Issue 2. Deductions for use of home expenses. Findings of Fact Petitioners took deductions of $1,800, $1,763.56, $553.58, $600 and $600 in the years 1960, 1961, 1962, 1963 and 1964, respectively. Respondent disallowed all of these deductions. These deductions were captioned either as "use of home expenses" or "non-reimbursed expenses" *302 which petitioners apparently claim to be deductible business expenses incurred for entertaining in their home. However, the $600 deduction in 1964 was captioned "use of residence to earn investments." Opinion Petitioners offered lists of party guests and a series of cancelled checks dated in two of the years. The evidence offered with respect to this item wholly fails to substantiate the entertainment expenditures but in any event it is clear there was no legal basis for the deductions for entertainment expenses. Petitioners apparently claim the deductions as business expenses incurred in entertaining customers and employees of their corporation. But their business was that of being employees of the corporation, Jensen Industries. The business that would give rise to such entertainment deductions would be the corporation's business, not petitioners. There was no basis for the business expense deductions. Whipple v. Commissioner, 373 U.S. 193 (1963). Petitioners could have had their controlled corporation reimburse them for any entertainment expense. No evidence was offered to substantiate the use of the home for investments in 1964 or any expenditures to substantiate *303 the deduction of $600 that year. In any event, there is no evidence that the petitioners were in any investment business that would support such a deduction for use of their home. Issue 3. Deductions for partnership losses. Findings of Fact The petitioners claimed deductions for losses arising from an alleged show business partnership called Talent Enterprises. His claimed losses were as follows: Year
Amount
1961
$955.00
1962
6,271.00
1963
3,525.87
1964 2,571.18
Total
$13,323.05
Opinion It was petitioner's testimony that he and his daughter, Gloria, were the two partners in Talent Enterprises. Gloria was 18 years old in 1961. She was claimed by the petitioners as a dependent in each of the years here involved. The evidence falls far short of showing any partnership loss for any of the years involved. Indeed, there is no clear evidence that any partnership known as Talent Enterprises was ever created. Petitioner argues the partnership is evidenced by the following document executed by Gloria: January 1, 1962 In consideration for Harold Aisley advancing to me all monies and/or services relating to all professional and related expenses to *304 develop my career as a model and/or actress, I agree to pay him 50% of the profits derived from my career for the next seven (7) years. /s/ Gloria Ruth Aisley Gloria Ruth Aisley This document cannot be construed to create a partnership between Gloria and her father. [1] Evidently petitioner signed no articles of partnership or any instrument wherein he agreed to become a partner. He was under no obligation to furnish her any money or services. Gloria did not testify. She never earned any money as an actress or model. The name "Talent Enterprises" appears to be a name petitioner uses without any basis in any partnership agreement. 270 In any event, there was almost no attempt by petitioner to substantiate the expenditures he said he made to further Gloria's career. No checks or receipts were offered in evidence. Petitioner offered a sort of calendar of expenditures for Gloria for 1963 showing expenses for weekly beauty parlor visits, clothing, cosmetics, schooling, and other expenditures of the type a wealthy father like petitioner *305 would make for his young daughter. We hold petitioners did not succeed in substantiating any partnership loss deductions for any of the years involved. Issue 4. Casualty loss. Findings of Fact In their 1961 return petitioners took a casualty loss in the amount of $1,800 which respondent disallowed. Opinion Petitioner's testimony with respect to the casualty loss in the amount of $1,800 was that it was due to a storm that "Started Jan. 25, 1961, [that] lasted over 1 week with heavy winds and rain." [2]
It was petitioners' evidence that the casualty loss, due to said storm, was as set forth in his Exhibit 30, as follows: Casualty Loss Due To Storm:
Trees - 4 Palm Trees Blown Down
$400
Trees Were Large When Planted In 1956.
1 Large Peach Tree Blown Down, Tree About 15 Yrs. Old.
200
Shed - Shed Destroyed
250
Furniture Stored In Shed Destroyed:
Dresser
200
Rug
250
Desk
155
Ping Pong Table
75
Permanent Awning Over Pool Deck, Blown Down and Demolished
190
Hauling Debris 80
$1,800.00
*306 Petitioners had the burden of proving the casualty-type event and the amount of loss they suffered therefrom resulting from physical damage to their property. Joe B. Thornton, 47 T.C. 1. The casualty-type occurrence, according to petitioner's evidence was, as stated, a storm with heavy winds and rain which started January 25, 1961 and lasted over a week. In the petition it was alleged: 5. In regard to the casualty loss - It is the taxpayers position that during a heavy storm in December, 1961 the taxpayer's pool over-flowed and water seeped into the taxpayer's home damaging carpeting and furniture. The storm also ruined certain landscaping. The estimated reduction in fair market value of the property was in excess of $1,800.00. The protest filed earlier with respondent made the same description of the $1,800.00 casualty loss. The time when the storm occurred and the description of property damage in the petition and protest statement are utterly different from petitioner's evidence. It was also petitioner's burden to prove the amount of loss he suffered due to the casualty *307 event. And this burden means his proof must satisfy the requirements of respondent's regulations. As provided by the regulations, sec. 1.165-7(a)(2)(ii), the cost of repairs or replacement of damaged property is sometimes acceptable as evidence of loss of value. However, the regulations provide that the yardstick that should measure the casualty loss is the decline in the fair market value of the property immediately after the casualty-type occurrence from what it was before it was damaged immediately before the casualty-type event. Squirt Co.51 T.C. 543. The allegation in the petition indicates petitioner was aware of the necessity to prove a casualty loss by proof of reduction in market value of the property damaged by the storm. Section 1.165-7(a)(2)(i), Income Tax Regs., provides: In determining the amount of loss deductible under this section, the fair market value of the property immediately before and immediately after the casualty shall generally *308 be ascertained by competent appraisal. * * * Petitioner wholly failed to sustain his burden with respect to the $1,800 casualty loss in 1961. Even the proof of the occurrence of the event is quite unsatisfactory. 271 According to the record the storm was either sometime during a week in January 1961 or 11 months later. The nature of the storm (wind storm or flood) and the description of the property allegedly damaged by the storm are not the same in the protest statement and petitioner's Exhibit 30. Finally, there is a complete lack of compliance with respondent's regulations governing proof of the extent of the casualty loss. Petitioner's bare statement as to the extent of his loss with respect to each piece of property is not the "competent" appraisal intended by sec. 1.165-7(a)(2)(i), Income Tax Regs.Joe B. Thornton, supra.
Issue 5, Small business stock loss Findings of Fact Petitioners claimed in their 1961 return that they suffered a small business stock loss in the amount of $25,100. Opinion In their petition, the petitioners explained this deduction as follows: 3. In regard to the small business corporation loss - *309 It is the taxpayers position that he is fully entitled to deduct such loss under code Section 1244. The taxpayer invested $25,100.00 for 50% interest in Jensen Engineering Corp. in 1959. The company's stock was issued as Small Business Stock and since it became insolvent in 1961, the taxpayer is allowed the loss in that year. At the trial petitioner offered no evidence that he ever bought any stock of Jensen Engineering Corporation. He said the loss resulted from a loan that he made to Jensen Engineering Corporation that he said became worthless in 1961. There was no amendment to the petition raising a bad debt issue. There is no documentary evidence of any loan, or any notes, or any record indicating petitioner made any loan to Jensen Engineering Corporation. And no evidence of loss in the year 1961. There is no basis in the record for allowing the loss on any theory pleaded or argued by petitioners. Issue 6. Loss from business ventures Findings of Fact The petitioners' 1962 return claims a deduction in the amount of $14,750 for an "INVESTMENT IN BUSINESS VENTURES THAT FAILED IN 1962." Respondent disallowed the deduction. Opinion In their petition and their earlier *310 protest the petitioners claimed that $14,750 was invested in a "twist-ball" venture in 1961 and 1962 and that the business failed in 1962 and no portion of the investment was returned to them. There was no clear proof of the investment of $14,750. Petitioner testified that less than $14,750 was invested in the "twist-ball" venture, and he admitted suing to recover the money obtaining a judgment in 1964 and later recovering at least part of the money. Obviously, the investment did not become worthless in 1962. What proof there is indicates that no more than $13,500 was invested in "twist-ball" instead of $14,750 alleged in the petition. Without amending the petition in any respect petitioner introduced evidence of another alleged investment loss in 1962. He argues this investment evidence shows that he spent $1,250 in an effort to get a savings and loan charter but the application was denied. He introduced his cancelled check in the sum of $1,250. There was no evidence with respect to the payees of the check, a named attorney and another person called "trustees", no evidence of what the check was used for. Petitioner claims the alleged "lost investment" was an ordinary and necessary *311 business expense deductible under sec. 162, I.R.C. of 1954, because if the savings and loan charter had been granted he would have been in a position to help Jensen Industries by helping its customers secure loans. There is no merit in the argument. It does not support a business expense deduction in his individual return. Issue 7. Legal and accounting fees Findings of Fact In their 1962 income tax return petitioners deducted "LEGAL AND ACCOUNTING FEES INCURRED IN PRESERVING INVESTMENTS $1,782.08." Respondent disallowed the deduction. Opinion In their protest, petitioners stated with respect to this deduction: (e) Legal - Accounting fees $1,782.08 Taxpayer paid $200.00 for personal book-keeping services in connection with his various business enterprises. He also paid $1,582.08 in legal fees relating primarily to the investment made in Jensen Engineering Corp. 272 In their petition they make substantially the same allegation as made in the protest. At the trial petitioners presented six cancelled checks, all dated in 1962 in the total amount of $200, with Arnold Arend the payee. It was petitioner's testimony that these checks were for *312 personal book-keeping services in 1962. Petitioner also introduced 4 cancelled checks dated in 1962 totalling $1,582.08. Two of these checks, one for $500 and one for $43.23, were to a firm of attorneys. It was petitioner's testimony that the payments were for attempting to collect the loan that he had made to Jensen Engineering. He had testified the loan became worthless in 1961. The record does not support the deduction of $200 for personal bookkeeping or the deduction of the claimed $1,582.08. Issue 8. Investment expenses, including legal Findings of Fact In their 1963 return petitioners deducted the sum of $2,374.34 which is labeled "Investment Expenses Including Legal." Respondent disallowed the deduction. Opinion In their petition petitioners alleged with respect to this item: Taxpayer paid $1798.35 for investment and legal counseling, $500.00 on an investment in a business project that failed and an additional $75.99 investment expense, primarily for taxes. Petitioner introduced 8 cancelled checks to support this deduction. The first check is to the Treasurer of City of Los Angeles, dated October 1, 1963, in the total amount of $94.22. The only indication of *313 what the check was for is the punch card bill attached to the cancelled check. It indicates the check paid $75.99 principal and $18.23 interest on an improvement bond. Seven more cancelled checks to various payees in varying amounts bring the total of the 8 cancelled checks to $2,374.34, the amount of the deduction if the $18.23 interest contained in the first check is eliminated. There is almost no explanation in the record with respect to these cancelled checks. Two of the checks were to an attorney as trustee. There is a little testimony that these checks were to secure a bank charter for organizers. A letter in the record shows the application was denied sometime before October 1969. Four of the checks were to a firm of attorneys. The only indication of what they are for are the notations on the checks. The notations indicate one was for "Costs re: Costello Russell" and the other three were with respect to Jensen Engineering. The last check was to an attorney with respect to the "twist-ball" investment which the record shows was all or partly recovered in 1964. We do not understand petitioner's position with respect to these checks being support for the "Investment Expenses *314 Including Legal" deduction. On brief, petitioner does not state his position. He merely states he will let the record speak for itself. We are left with evidence of expenditures made but no satisfactory evidence that would render such expenditures deductible on any theory. We hold for respondent on the issue. Decisions will be entered under Rule 50. Footnotes
1. In his original protest filed with respondent, petitioner stated he was to furnish no more than $15,000 and receive one-third of the profits.↩
2. Petitioners took casualty loss deductions in three of the four years here involved. In the 1962 return the casualty loss was for "Rain damage - slate in house 40.00" and "Theft" 180.00 with 100.00 reimbursed by insurance or a net loss of $120.00. In 1964 the casualty loss was for a "Missing wallet - missing while changing clothing in Dept. Store trying on clothes" $200.00 with no amount reimbursed by insurance.↩