RICHARD W. HECHT, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hecht v. Commissioner
Docket No. 1232-72.
United States Tax Court
T.C. Memo 1974-22; 1974 Tax Ct. Memo LEXIS 297; 33 T.C.M. (CCH) 100; T.C.M. (RIA) 74022; January 29, 1974, Filed. Richard W. Hecht, pro se.
Richard J. Shipley, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION
SCOTT, Judge: Respondent determined deficiencies in petitioner's income taxes for the calendar years 1965 and 1968 in the amounts of $1,293.36 and $2,234.52, respectively.
The only issue for decision is whether petitioner is entitled to an ordinary loss or a short-term capital loss in the amount of $20,000 in the calendar year 1968. 2 The resolution of this issue depends on whether the foreclosure by the holder of the mortgage on real estate which had been placed in petitioner's name by an individual to whom he had previously lent $20,000 resulted in a business loss or loss by involuntary *298 conversion to petitioner, or resulted in a nonbusiness debt of petitioner's becoming worthless. The deficiency for the year 1965 is due entirely to the disallowance of a net operating loss carryback from the year 1968 to the year 1965, which net operating loss carryback had previously been tentatively allowed.
FINDINGS OF FACT
Petitioner, an individual who resided at Eielson Air Force Base, Fairbanks, Alaska at the time of the filing of his petition in this case, filed his individual income tax returns for the calendar years 1965 and 1968 with the district director of internal revenue at Anchorage, Alaska.
Petitioner went to Alaska in 1943 as a civilian employee of the United States Government, stationed at Eielson Air Force Base, Fairbanks, Alaska. He has remained employed in this capacity from that date through the time of the trial of this case. Petitioner has lived at Eielson Air Force Base this entire time except for the 1-year period from September of 1962 until September of 1963 when he was attending a school at Fort Belvoir, Virginia. 3 In the late 1950's petitioner became acquainted with an individual by the name of Grabianowski. Originally their acquaintanceship *299 was entirely a social one. Grabianowski was engaged in building apartments and residences in the Fairbanks area and also in certain construction under Federal Government contracts, some of which was in outlying areas of Alaska sometimes referred to as "Bush Country." Grabianowski operated under the name of Alca Construction Co.
After becoming acquainted with Grabianowski, petitioner occasionally in his off-work hours performed some electrical work for him, and on one occasion Grabianowski did some concrete work for petitioner on a rental property which petitioner owned.
In the fall of 1960 Grabianowski told petitioner that he was in financial difficulty on some of the contracts he was performing and asked petitioner to lend him some money at 8 percent interest. Petitioner at that time lent Granbianowski $15,000. Grabianowski gave petitioner a note for $15,000 which stated that the loan was at an interest rate of 8 percent. Petitioner kept a record of the interest which Grabianowski owed him but never collected this interest from Grabianowski. Petitioner did not push Grabianowski for payment since he recognized that Grabianowski continued to be in financial difficulty. 4 *300 On September 1, 1963, immediately following petitioner's return from a year at Fort Belvoir, Virginia, he and Grabianowski executed an agreement which read as follows:
In consideration of the sum of $20,000 (twenty thousand) having been paid in cash by Richard W. Hecht to Z. Grabianowski on the above mentioned date, it is hereby agreed between Richard W. Hecht and Z. Grabianowski as follows:
As of 1 January 1964 Richard W. Hecht acquires protected interest in Alca Construction Co., all other enterprises and properties of Alca Construction Co. and/or Z. Grabianowski personally in the proportion of 1/6 (one sixth).
A. Grabianowski agrees to disburse annually 1/6 (one sixth) of all net income proceeds after taxes to Richard W. Hecht, but not less that 8 (eight) per cent of the above mentioned sum of $20,000 (twenty thousand)
Richard W. Hecht can at any time withdraw his interest in Alca Construction Co. or other enterprises and properties of Z. Grabianowski upon 6 (six) months notice. Z. Grabianowski can at any time repay Richard W. Hecht his interest in the amount of 1/6 (one sixth) of true independently appraised value of Z. Grabianowski's enterprises and properties but in no *301 event less than Richard W. Hecht's original investment. By mutual agreement the ratio of Richard W. Hecht's and/or Z. Grabianowski's interest in the enterprises and properties can be changed by increase or decrease of capital contributions.
The $20,000 amount referred to in the agreement was composed of petitioner's original loan to Grabianowski 5 of $15,000 none of which had been repaid to petitioner and accrued interest of approximately $3,600 for 3 years which had become due on this loan but had not been paid by Grabianowski to petitioner, plus an additional amount of $1,400 which petitioner advanced to Grabianowski.
The agreement between petitioner and Grabianowski was entered into on Grabianowski's insistence in order to give petitioner some protection for the money he had advanced to Grabianowski. After the agreement was entered into petitioner considered Grabianowski to continue to be short of funds and therefore never requested payment of any part of the $20,000 or interest thereon.
Petitioner became aware that the First Federal Savings and Loan Association of Fairbanks, Alaska had begun to collect directly the rents on certain properties which Grabianowski owned *302 in order to apply them on mortgage loans which had been made to Grabianowski. In December 1965 Grabianowski left Alaska and has never returned. The only contact petitioner has had directly with Grabianowski since he left Alaska in December 1965 was a postcard which petitioner received from Grabianowski from somewhere in Europe. 6 Before leaving Alaska in 1965, Grabianowski transferred to petitioner, by quitclaim deed, all his interest in a property on Badger Road in Fairbanks, Alaska. Grabianowski had this quitclaim deed recorded in the property records at Fairbanks, Alaska. The property covered by this quitclaim deed had been previously sold by Grabianowski to a couple named Lingenfelter under a real estate contract. The First Federal Savings and Loan Association of Fairbanks, Alaska held a mortgage on this property and the payments which were being made by the Lingenfelters under the real estate contract were being paid directly to the First Federal Savings and Loan Association. Petitioner did not learn of Grabianowski's recording the quitclaim deed transferring the Badger Road property to him until sometime after Grabianowski had left Alaska. The Badger Road property *303 was encumbered by a number of liens in addition to the mortgage held by the First Federal Savings and Loan Association. Petitioner did not learn of the encumbrances until sometime in 1967.
Prior to leaving Alaska Grabianowski had gone to the borough tax office in Fairbanks, Alaska and for tax purposes listed petitioner as the owner of several other properties to which Grabianowski held title but on which the First Federal Savings and Loan Association 7 of Fairbanks, Alaska held mortgages and was collecting rentals to defray the mortgage payments. The information concerning this action by Grabianowski came to petitioner's attention in the spring of 1966 when he received tax assessment notices from the borough and investigated the reason for receiving the notices. Petitioner obtained the impression that the moneys which were being collected by the First Federal Savings and Loan Association of Fairbanks, Alaska on the Badger Road property and the other properties which Grabianowski had listed on the tax records in his name were being used by the First Federal Savings and Loan Association not only to defray the mortgage payments on the property but also the taxes on the property. *304 Petitioner considered that Grabianowski had transferred these properties to him as protection for the loan he had made to Grabianowski and with the hope that when the indebtednesses on the properties had been paid off petitioner might be able to obtain moneys out of the properties to repay the amount which he had lent to Grabianowski.
In August of 1967 a severe flood occurred in Fairbanks, Alaska, and the Badger Road property, as well as the other properties that had been placed in petitioner's name on the tax records, was severely 8 damaged by the flood. After the flood the Lingenfelters abandoned the Badger Road property and the persons living in the other properties left because none of these properties was in habitable condition. After the flood petitioner discussed the properties with representatives of the First Federal Savings and Loan Association of Fairbanks and the representatives of that company tried to persuade him to obtain a Small Business Administration Loan to restore the properties. Petitioner refused to apply for such a loan since in his opinion he would not be able to come out financially but would be better off to permit the First Federal Savings and *305 Loan Association to foreclose on the properties than to make such a loan and restore the properties. In 1968 the First Federal Savings and Loan Association did foreclose on all of the properties and petitioner obtained nothing from the properties.
Petitioner at no time collected any part of the $20,000 which was the subject of the agreement of September 1, 1963.
Petitioner on his 1968 Federal income tax return listed on Schedule D under part III, "Property Other than Capital Assets," a loss of $20,000 and deducted this loss from his income otherwise reportable with 9 the result that he showed a net loss for the year 1968 of $6,432.32. He attached to his return the following explanation of the claimed loss:
INVOLUNTARY CONVER SION SCHEDULE D ORDINARY LOSS Taxpayer made an agreement with Z. Grabianowski DBA Alca Construction on September 1, 1963 for in consideration of $20,000.00 cash paid by taxpayer, he was to receive reimbursement plus interest. Mr. Grabianowski failed in his business and left Alaska. Before leaving income properties were turned over to him. Both properties were mortgaged by First Federal Savings and Loan of Fairbanks. Both properties were repossed *306 [sic ] by First Federal. Taxpayer received no financial benefit from transfer of property, and repossession. Property repossessed on February 27, 1968.
Loss by involuntary conversion of $20,000.00 claimed on 1968 return.
Petitioner carried back the net loss shown on his 1968 return to the year 1965 and claimed a refund because of the net operating loss carryback. The refund was tentatively allowed.
Respondent in his notice of deficiency treated the loss of $20,000 claimed by petitioner in 1968 as a short-term capital loss which was required to be used in reduction of capital gains with the deductible portion of the net loss limited to $1,000 in 1968, explaining that the $20,000 loss resulted from advances 10 made by petitioner to Grabianowski becoming worthless. Because of the disallowance of a portion of the claimed loss in 1968, respondent determined that he had erroneously, tentatively allowed the net operating loss carryback to the year 1965 and therefore determined the deficiency for that year in the amount of the allowance tentatively, previously made.
OPINION
Section 166(d), I.R.C. 1954, [1] provides that in the case of a taxpayer other than a corporation, if any *307 nonbusiness debt becomes worthless within the taxable year, the loss resulting therefrom shall be considered as a loss from the sale or exchange during the taxable year of a capital asset held for not more than 6 months. This section defines the 11 term, "nonbusiness debt" to mean a debt other than one created or acquired in connection with a trade or business of the taxpayer or a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business.
*308 It is respondent's position in this case that petitioner's loan to Grabianowski was a nonbusiness bad debt since it was not created or acquired in connection with any trade or business of petitioner and was not a debt the loss from the worthlessness of which was incurred in petitioner's trade or business.
Petitioner represented himself at the trial of this case and he filed no brief. The record is not clear precisely what position he is now taking with respect to the claimed loss of $20,000. At the trial he indicated that he considered his $20,000 loss to be a business loss since he lent the money originally to Grabianowski in what he considered a business transaction in the belief that Grabianowski would be able to repay him the funds plus 8 percent interest, which he viewed as a good interest return on his money.
While petitioner referred on his income tax return to a loss from involuntary conversion, he at no time during the trial contended that the loss was other than a loss of the amount which he had advanced 12 to Grabianowski and in fact made it clear that he considered that the properties which Grabianowski transferred to him were transferred to him in an effort *309 by Grabianowski to in some way enable petitioner to be repaid the advances he had made to Grabianowski.
The record shows no activity of petitioner with respect to the property which Grabianowski transferred to him after he learned about the transfer. The Badger Road property which Grabianowski transferred to petitioner had been previously sold by Grabianowski under a land contract. It was therefore obvious that petitioner could be engaged in no business with respect to this property. Had payments under the land contract which were collected by the First Federal Savings and Loan Association of Fairbanks, Alaska ultimately paid off the entire mortgage on the property, petitioner might have collected some funds from the purchaser thereafter to repay in part the advances he had made to Grabianowski.
Even though the other properties which Grabianowski placed in petitioner's name on the tax records were apparently rental properties, the record indicates that petitioner was in no way during the years these properties remained registered in his name on the tax records, engaged in the business of renting these properties. The rents were collected by the First 13 Federal Savings and *310 Loan Association of Fairbanks, Alaska and applied to discharge payments on the mortgages on the properties as they became due. The record is not even clear as to what interest petitioner might ultimately have had in the properties other than the Badger Road property. Also, the reasonable indication from the record is that petitioner at most had some type of security interest in these properties for the advances he had made to Grabianowski. The record indicates that Grabianowski had numerous other creditors and in fact petitioner testified that after Grabianowski left he became aware of this fact. The most that this record indicates is that the other properties which Grabianowski listed in petitioner's name were so listed as a security for the loan which petitioner had previously made to Grabianowski.
We conclude from this record that the amount advanced by petitioner to Grabianowski was not a debt created or acquired in connection with a trade or business of petitioner or a debt the loss from the worthlessness of which was incurred in petitioner's trade or business. Petitioner's primary business was being an employee of the United States Government. 14 There is some indication *311 in the record that until approximately 1967 petitioner also owned one piece of property which he rented. While the ownership by petitioner of this piece of property which the record indicates was in no way connected with the properties which originally belonged to Grabianowski might have constituted a trade or business, there is nothing in this record to indicate that the $20,000 advance by petitioner to Grabianowski or the advance becoming worthless in 1968 was proximately connected or in fact in any way connected with the rental by petitioner of the piece of property which he had rented.
We therefore conclude that petitioner's loss was a loss from a nonbusiness bad debt which is to be treated under section 166(d) (1) as a loss from the sale or exchange of a capital asset held for not more than 6 months. Whipple v. Commissioner, 373 U.S. 193 (1963).
Respondent in his brief notes that apparently petitioner had no basis in the approximately $3,600 portion of the $20,000 debt which represented interest which had not been paid to or apparently reported by petitioner for income tax purposes but states that he does not contend for the purposes 15 or this case that *312 this $3,600 is not a portion of the nonbusiness bad debt loss since he determined in his statutory notice that petitioner was entitled to deduct the entire $20,000 as a nonbusiness bad debt deduction.
Although petitioner did not contend that he had invested the $20,000 in the Alca Construction Co. business because of the provisions of the agreement of September 1, 1963, or that the properties transferred to him by Grabianowski were in partial payment of the $20,000 indebtedness rather than as security for the debt, we considered these possibilities. Petitioner testified that there was no intent by the agreement of September 1, 1963, that he invest in Grabianowski's business but rather the agreement was security for the $20,000 loan. If the $20,000 were viewed as invested by petitioner in Grabianowski's business, it would appear that the loss of this investment would have occurred not latter than 1965 when Grabianowski abandoned his business and left Alaska.
Petitioner also testified that he considered that Grabianowski executed and recorded the quitclaim deed conveying the Badger Road property to him and placed the other properties in his name on the tax records as 16 security *313 for the $20,000 debt. He specifically testified that he did not consider the quitclaim deed and the transfer to be in payment of the debt. If, nevertheless, we were to consider that these transfers were in payment of the debt, then it would be necessary to determine the value of the interests transferred to petitioner at the time the transfers were made and to the extent this value was less than $20,000 petitioner would have incurred a bad debt loss when he accepted the lesser payment by taking the properties. The First National Bank, Philipsburg, Pennsylvania, 43 B.T.A. 456 (1941). There is nothing in this record to show the value, if any, of the interests in these properties transferred to petitioner.
Therefore, even if we were justified by this record in viewing the transactions between petitioner and Grabianowski to have been changed from that of debtor-creditor either by the September 1, 1963 agreement or the transfer of the interest in the properties to petitioner in 1965, petitioner would not be entitled to the claimed $20,000 deduction for a loss in 1968.
We conclude that the proper view of the facts in this case supports respondents determination that petitioner *314 in 1968 had a nonbusiness bad debt loss of $20,000 and we so hold.
Decision will be entered for respondent. Footnotes
1. All references are to the Internal Revenue Code of 1954.
Sec. 166(d) Nonbusiness Debts. - (1) General rule. - In the case of a taxpayer other than a corporation - (A) subsections (a) and (c) shall not apply to any nonbusiness debt; and
(B) where any nonbusiness debt becomes worthless within the taxable year, the loss resulting therefrom shall be considered a loss from the sale or exchange, during the taxable year, of a capital asset held for not more than 6 months.
(2) Nonbusiness debt defined. - For purposes of paragraph (1), the term "nonbusiness debt" means a debt other than - (A) a debt created or acquired (as the case may be) in connection with a trade or business of the taxpayer; or
(B) a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business.↩