JOHN O. ROGERS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent.
Rogers v. Commissioner
Docket No. 6467-74.
United States Tax Court
T.C. Memo 1977-286; 1977 Tax Ct. Memo LEXIS 159; 36 T.C.M. (CCH) 1138; T.C.M. (RIA) 770286; August 23, 1977, Filed John O. Rogers, pro se. Roy L. Allison, for the respondent. HALL MEMORANDUM FINDINGS OF FACT AND OPINION HALL, Judge: *160 Respondent determined deficiencies in petitioner's Federal income tax for 1967 and 1968 in the respective amounts of $2,922.50 and $4,430.00. The sole issue for decision is whether petitioner is entitled to net operating loss carryback deductions for 1967 and 1968 by reason of deductions taken in 1970 for depreciation and other business expenses and by reason of a 1970 business bad debt or business loss. [1]
FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. At the time petitioner filed his petition, he resided in Bryan, Texas. Until August 13, 1968, petitioner was an employee of Velvetex Industrial Corporation ("Velvetex"), a Michigan corporation, and was also the controlling stockholder, owning 62 1/2 percent of the outstanding stock of this corporation. On August 13, 1968, petitioner entered into an agreement with Instrument Systems Corporation, *161 a New York corporation, for exchange of his stock in Velvetex for capital stock in Instrument Systems Corporation. On or about September 5, 1969, petitioner severed his employment with Velvetex. The principal business activity of Velvetex was the application of a velvet-like coating to various articles (called electrostatic flocking). On December 11, 1969, petitioner entered into an agreement with Instrument Systems Corporation and Velvetex not to compete with Velvetex. On July 29, 1969, Velvet Finishes, Inc. ("Velvet") was incorporated under the laws of the State of Michigan. Velvet was to enter into the same general business as that carried on by Velvetex. Petitioner, though nominally not a shareholder, [2] director, officer, or employee of Velvet, paid various corporate business expenses of Velvet during his taxable years 1969 and 1970. The payments were made by petitioner because he had entered into an understanding with Velvet's president that once Velvet got off the ground, petitioner would be given controlling interest in the corporation. This arrangement was made by petitioner to avoid breaching the covenant not to compete which petitioner had entered into with Instrument *162 Systems Corporation and Velvetex. In addition to the payments of the corporate expenses of Velvet, petitioner also executed a security agreement chattel mortgage with the National Bank of Detroit, on April 14, 1970, pledging a flocking machine as security for a $15,060 loan to either Velvet or petitioner (the record does not disclose which). Velvet received $13,500 of the proceeds from the loan while petitioner received $1,500 to defray traveling expenses he had incurred on behalf of Velvet. The flocking machine had been purchased by petitioner in October 1969 at a total cost of $14,815.22 (including freight, custom duties, taxes and insurance). Petitioner made one $750 payment on the loan. It is unknown whether Velvet made any payments on the loan. Sometime in 1970, the loan was in default, and the bank foreclosed on the flocking machine. Petitioner was not in the business of lending money during 1970. *163 Velvet ceased business activities in 1970, and petitioner was not reimbursed for any of the expenditures he made on behalf of Velvet. On his 1970 income tax return, petitioner claimed net operating losses of $35,578, resulting from $13,060 of business expenses and $22,518 of business bad debt losses arising from his involvement with Velvet. He subsequently filed an "application for tentative refund from carryback of net operating loss" (Form 1045) for 1967 and 1968. As a result, respondent refunded to petitioner $2,922.50 for 1967 and $4,430.00 for 1968. In his statutory notice respondent determined the petitioner was not entitled to a net operating loss for 1970 as a result of the disallowance in their entirety of the business expenses and the business bad debt losses. OPINION The sole issue for decision is whether petitioner sustained net operating losses in 1970 by reason of claimed deductions for depreciation and business expenses arising in 1970 and by reason of either a business bad debt or business loss arising in 1970. Petitioner, to avoid breaching a covenant not to compete, set up a business (Velvet Finishes, Inc.) in which he was nominally neither an officer, *164 nor director, nor employee, nor shareho der but to which he devoted his time and contributed his money. The business failed in 1970 and petitioner lost all that he had contributed to it. He deducted his loss on his 1970 return as (1) business expenses and (2) business bad debt losses. The claimed business expenses included, in part, certain of Velvet's corporate expenses paid by petitioner. The claimed business bad debt losses included, in part, his cost for a flocking machine. Respondent disallowed all deductions claimed in both categories. Petitioner has conceded some of the amount he deducted as business expenses in 1970. He asserts, however, that he is entitled to a deduction for expenditures he made on behalf of Velvet for insurance, interest, automobile expenses, packaging and telephone service in the amount of $2,530 and for depreciation in the amount of $1,262 for 1970. Petitioner also asserts that he is entitled to a deduction for either business bad debts or business losses in the amount of $32,688 for various other expenditures he made on behalf of Velvet in 1969 and 1970, as well as for the cost of a flocking machine he lost when the business failed. Respondent, *165 on the other hand, asserts that petitioner has failed to prove either payment of or the business purpose of the claimed expenditures for insurance, interest, automobile expenses, packaging and telephone service. With respect to the remaining depreciation deductions, respondent asserts that petitioner has failed to prove the specific identity of the property depreciated, its manner of use or its cost basis. Respondent also asserts that petitioner has failed to prove that the depreciated property was ever used in his trade or business or held for the production of income, as required by section 167. [3] Finally, respondent asserts that petitioner has failed to prove that there was a genuine debtor-creditor relationship between him and Velvet that would give rise to a bad debt deduction under section 166, or either the business or profit seeking purpose or the payment of the expenses which would give rise to the claimed losses. Petitioner, who appeared pro se, lived in Texas at the time of trial. However, when he filed his 1970 return, he lived in Michigan and his return was prepared *166 by a Michigan certified public accountant. Ptitioner presented the Court with copies of his personal checks written in 1969 and 1970 and testified on his own behalf. Unfortunately, his testimony for the most part was so vague, garbled and contradictory that it is impossible to make much sense out of it. He testified that he had spent all the money represented by his personal checks on Velvet; however, he could not reconcile the checks with his returns for 1969 and 1970. In addition, the amounts shown on many of his checks appear as business expenses claimed on his return for 1969. In sum, petitioner appears to have mixed together personal expenses and those expenses he paid for Velvet, and 1969 expenses with 1970 expenses. We believe that he spent substantial sums of money in 1969 and 1970 trying to make Velvet into a going business with the understanding that if it did succeed, he would somehow own and control the business. Velvet did not succeed and he never became a stockholder of the company. We believe his expenditures represent investments in a business that failed. As such, they are not expenses or losses incurred in carrying on a trade or business, nor is there any *167 evidence these sums represent debts. Taking the claimed deductions individually, first we conclude that while he did make the expenditures listed as business expenses in his 1970 return (Schedule C) (exclusive of depreciation and exclusive of conceded expenses), they were not made in his trade or business, but rather in the trade or business of Velvet, a corporation. With respect to the depreciation deduction, petitioner has failed to present any evidence upon which we can substantiate such a deduction. Finally, with respect to the claimed business bad debt and business loss deductions, we are of the opinion that petitioner has failed to prove that either the claimed debt or loss was proximately related to his trade or business. Generally, in computing net operating losses, only business bad debts and business losses will be taken into account. Section 172(d)(4). Thus under either theory advanced by petitioner he must demonstrate the proximate relationship of the losses or debts incurred to his trade or business. Sections 1.165-1(e) and 1.166-5(b), Income Tax Regs. However, *168 petitioner has failed to demonstrate that the alleged losses were incurred in his trade or business. Petitioner was not in the trade or business of making loans, nor is there any evidence that he was in the trade or business of promoting corporations. Cf. Whipple v. Commissioner,373 U.S. 193, 202 (1963). His relationship with Velvet appears to be no more than an investor putting money into a venture. Similarly, if these advances are characterized as debts which became worthless during 1970, they would not be business bad debts. Petitioner has failed to show that the alleged debts were proximately reated to his business. During 1969 and 1970 he was not an employee, officer, director or shareholder of Velvet, nor was he in the business of loaning money or promoting corporations. In view of these facts we conclude that petitioner incurred no losses in 1970 which would give rise to a net operating loss deduction in 1967 and 1968. Decision will be entered under Rule 155. Footnotes
1. Respondent disallowed a claimed business bad debt of $22,518 and Schedule C business expenses of $13,060 for 1970. Of the business expense deduction, petitioner has conceded $5,117 of the total of $6,379 depreciation claimed and all the $4,151 travel and entertainment expenses claimed.↩
2. Though petitioner was not a shareholder of record, it appears either that the president of Velvet held stock in Velvet as petitioner's nominee or that petitioner had an option to purchase the stock after the expiration of his covenant not to compete with Velvetex.↩
3. All statutory references are to the Internal Revenue Code of 1954, as in effect during 1970.↩