HINSDALE SMITH, JR., AND MARJORIE L. SMITH, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Smith v. Commissioner
Docket No. 3082-78.
United States Tax Court
T.C. Memo 1984-361; 1984 Tax Ct. Memo LEXIS 312; 48 T.C.M. (CCH) 517; T.C.M. (RIA) 84361; July 16, 1984. Hinsdale Smith, Jr., pro se. Thomas C. Boscarino, for the respondent. HAMBLEN
MEMORANDUM FINDINGS OF FACT AND OPINION HAMBLEN, Judge: Respondent determined a deficiency of $6,426 in petitioners' 1974 Federal income tax. After concessions, the sole issue for *313 decision is whether a loss sustained by petitioner during 1974 in the amount of $16,320, which he had loaned to his wholly-owned corporation, constitutes a business or a nonbusiness bad debt loss deduction under section 166. [1]
FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioners [2] resided in Suffield, Connecticut, when they filed their petition in this case. Nikor Products Co., Inc. ("Nikor") was incorporated in Massachusetts by petitioner in 1955. It is the successor to a business petitioner commenced in New York during 1933. Nikor manufactures tanks used in the film industry. Petitioner has been the sole stockholder and president of Nikor since *314 its incorporation and received $31,512 as compensation from Nikor during 1974. Nikor had established a capital base in excess of $300,000 through 1974. In addition to his salary from Nikor, petitioner reported dividend and interest income in excess of $13,000 on his 1974 income tax return. Sometime after its incorporation, petitioner caused Nikor to employ a manager for the business. Certain duties were assigned to this manager, while petitioner continued to perform some work in development and design of new business products, customer relations, and production. During 1974, the day-to-day business activities and functions of Nikor were performed by the manager. Nikor began to experience financial difficulties in 1972 and 1973 because of price rises and difficulty in obtaining metal stampings which were essential to its business. To allay these problems, Nikor curtailed certain projects and arranged with its principal distributor for cash payment on receipt of invoice and shipping notice signed by the carrier. During 1974, petitioner discovered that Nikor was in serious financial trouble and owed the Federal government approximately $44,000 in payroll taxes. Petitioner *315 loaned approximately $20,000 to Nikor from funds he personally borrowed from a bank. This loan was approved by Nikor's board, was recorded as a debt to petitioner on Nikor's books, and was evidenced by Nikor's note to petitioner. The purpose of petitioner's loan to Nikor was to enable it to discharge approximately one-half of the employee payroll tax arrearages and to avoid expense to the corporation which petitioner believed was recovering from its weakened financial condition. Nikor supplemented the funds advanced by petitioner and remitted to the Internal Revenue Service $22,000 in payment of approximately one-half of the outstanding employee payroll tax obligation. Petitioner, through his representative, designated that this payment was to be applied against the trust fund portion of Nikor's employer tax liability. [3]
At or about the time of petitioner's loan to Nikor, the corporation's manager obtained a forged shipping notice *316 which he submitted with an invoice to the distributor, pursuant to which Nikor was paid close to $100,000 for goods which had not been delivered. After hearing of this, and approximately three months following the above loan transaction, petitioner caused Nikor to make an assignment for the benefit of its creditors. In the subsequent liquidation proceedings, creditors of Nikor received a 15-percent distribution in satisfaction of their claims. Petitioner also received a liquidation distribution. Prior to making his personal loan to Nikor in 1974, petitioner had never loaned money to any person or business. At the time petitioner made his loan to Nikor, he was 73 years old. Petitioner was aware of Nikor's declining financial condition at the time he made his loan to Nikor and that, as a responsible officer of the corporation, he could be personally obligated for Nikor's delinquent employee taxes if respondent invoked the 100 percent penalty provisions of section 6672. On his 1974 return, petitioner claimed a business bad debt deduction of $16,320 for his personal loan to Nikor. In the notice of deficiency, respondent determined that petitioner was entitled to a nonbusiness *317 bad debt deduction which is deductible only as a short-term capital loss under section 166(d). OPINION We must decide whether petitioner is entitled to a business or nonbusiness bad debt deduction. There is no dispute as to the amount of the deduction or the year in which it is allowable. The only issue before us is the classification of the worthless debt loss under section 166. Section 166(a) provides that a deduction shall be allowed for any debt which becomes wholly worthless during the taxable year. Section 166(d), however, provides that, in the case of a taxpayer other than a corporation, a loss attributable to the worthlessness of a nonbusiness bad debt shall be treated as a short-term capital loss. Pursuant to section 166(d)(2), a nonbusiness debt is defined as follows: (2) Nonbusiness debt defined--For purposes of paragraph (1), the term "nonbusiness debt" means a debt other than-- (A) a debt created or acquired (as the case may be) in connection with a trade or business of the taxpayer; or (B) a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business. To be treated as a business debt, the debt must be proximately related *318 to the taxpayer's trade or business. Respondent determined that petitioner's advance to Nikor culminated in a nonbusiness bad debt. Respondent's determination is presumptively correct, and petitioner bears the burden of proving otherwise. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). Petitioner has failed to carry this burden. In order to overcome the presumed correctness of respondent's determination, petitioner must show that his advances to Nikor were proximately related to his trade or business. Sec. 1.166-5(b), Income Tax Regs.Whipple v. Commissioner,373 U.S. 193 (1963). Whether a debt is a business or nonbusiness debt is a question of fact. Sec. 1.166-5(b), Income Tax Regs.
On brief, petitioner argues for the first time that his advances to Nikor were made to preserve his compensation from the corporation. However, the record before us is devoid of any facts to sustain petitioner's contention. In his testimony at trial, petitioner related facts which serve Nikor's corporate purpose and, consequently, continuation of his status as an investor. Nowhere in the record does petitioner allude to any concern over his salary.When *319 questioned about the purpose of the advance to Nikor, petitioner unequivocably stated: THE COURT: All right. And, what was the real purpose of your making that loan and put it in your own words again to me? MR. SMITH: To save expense for the company which was gradually recovering from its weak position. * * * MR. BOSCARINO: Mr. Smith, isn't it a fact that the purpose of this advance that you claim to have made to Nikor Products was so that the corporation could pay off its tax arrearages that you had learned about? MR. SMITH: Yes. The foregoing responses of petitioner indicate an investment oriented advance for a corporate purpose and benefit. It is clear that petitioner's concern was for Nikor's problems, but his concern for Nikor does not cause the corporation's business to be his business. As we stated in Shinefeld v. Commissioner,65 T.C. 1092, 1098 (1976); The fact that a loan or payment is made in furtherance of the employer's trade or business does not mean it is proximately related to that of the employee. Robert E. Imel, [61 T.C. 318 (1973)]; James D. Robinson,45 B.T.A. 39 (1941). Cf. Deputy v. du Pont,308 U.S. 488 (1940); *320 Tony Martin,25 T.C. 94 (1955). For the petitioner to prevail on his argument that the advances to Nikor were proximately telated to his trade or business as an employee of Nikor, he must show that protection of his employment by the corporation was the dominant motive in the transaction. U.S. v. Generes,405 U.S. 93 (1972); Shinefeld v. Commissioner,supra at 1096 and 1099; Eisenberg v. Commissioner,78 T.C. 336, 349 (1982). [4]
It is clear that petitioner had several motives which impelled him to advance funds to Nikor, but was do not believe that concern for his continued employment by that corporation is one of them. We find that petitioner's dominant motive for the loan was to avoid additional expense for Nikor, which he felt was improving its *321 precarious financial condition, and to preserve its status as a going concern. Only on discovery of the forged shipping documents, which resulted in close to $100,000 being paid to Nikor for goods not delibered, did petitioner commence debtor liquidation proceedings. Another equally impelling motive was petitioner's knowledge that he could, in effect, be held personally liable for Nikor's payroll tax liability if respondent invoked the 100 percent penalty of section 6672 against him, notwithstanding his self-serving testimony to the contrary. The fact that petitioner, through his representative, took care to designate application of the loan proceeds to that liability weighs against petitioner's statement that the onus of section 6672 was not a consideration for the loan to Nikor. Petitioner has shown only that the funds he advanced to Nikor were used for the corporate purposes of paying Nikor's outstanding payroll tax liability and saving Nikor expense in the hope that its financial condition would improve and that it would survive as an ongoing concern. We find no evidence in the record here to enhance petitioner's contention, which he raised for the first time on brief, that *322 his loan to Nikor was premised on preserving his compensation as an employee of Nikor. There simply is no basis in the record to relate the advance by petitioner to his continuing employment by Nikor. While continuation of his compensation from Nikor may have been considered by petitioner, he produced no evidence at the trial to that effect. As petitioner admittedly is not in the trade or business of lending money and has no trade or business other than as an employee of Nikor, we find that the dominant motive for petitioner's advances to Nikor, as the sole stockholder of that corporation, was to provide it with funds needed to continue, hopefully, its operations and to avoid imposition of the section 6672 penalty upon him for its payroll tax obligation. As the loan was not related to petitioner's business as an employee of Nikor, it constitutes a nonbusiness debt subject to the limitations provided by section 166(d). To reflect the foregoing, Decision will be entered for the respondent.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended, and in effect during the taxable year in issue. All rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Petitioner Marjorie L. Smith is a party to this action only by virtue of having filed a joint return with her husband, petitioner Hinsdale Smith, Jr. Therefore, petitioner in the singular form hereinafter refers to petitioner Hinsdale Smith, Jr.↩
3. In the semantics of sec. 6672, the "trust fund" portion of such taxes refers to that portion of the tax liability for which a corporate officer can become personally responsible by the imposition of the 100 percent penalty under sec. 6672.↩
4. See Bittker, Federal Taxation of Income, Estates and Gifts, Vol. 2, par. 33.6 at p. 33-18(1981), where the text states: "* * * [I]f the debtor is a corporation controlled by the creditor, it is difficult to establish that it was necessary to advance funds to [assure continuing employment] in view of the [creditor's] preexisting control; * * *."↩