111 B.R. 342 (1990)
In re Ronald L. FARRINGTON, Debtor,
Ronald L. FARRINGTON, Plaintiff,
v.
UNITED STATES of America, DEPARTMENT OF the TREASURY, INTERNAL REVENUE SERVICE, Defendants.
No. 86-03392-C, Adv. No. 89-0178-C.
United States Bankruptcy Court, N.D. Oklahoma.
March 1, 1990.
*343 John B. Jarboe, Tulsa, Okl., for plaintiff.
Phyllis Gervasio, U.S. Dept. of Justice, Tax Div., Washington, D.C., for defendants.

AMENDED MEMORANDUM AND ORDER
STEPHEN J. COVEY, Bankruptcy Judge.
On December 8, 1986, Ronald L. Farrington d/b/a Farrington Livestock ("Debtor") filed for relief under Chapter 11 of the Bankruptcy Code. On April 12, 1988, the case was converted to a Chapter 7 proceeding. The United States of America, Department of the Treasury, Internal Revenue Service ("IRS") first filed a proof of claim on April 20, 1988. An amended claim was filed on August 1, 1988, another on July 29, 1988, and a final proof of claim on *344 February 1, 1989. This final claim is the subject of the present litigation and is for income tax due for the year 1982 as follows:

 Tax Due $35,087.00
 Interest 17,672.20
 Penalties 22,051.69
 __________
 Total $74,810.89

On June 8, 1989, prior to the filing of the final claim the Debtor filed an adversary complaint asking that this Court disallow entirely the claim of the IRS for the reason that the Debtor owed no income tax for the year 1982.
Jurisdiction to hear this matter is granted by 28 U.S.C. § 1334 and this is a core proceeding under 28 U.S.C. § 157. Also § 505 of the Bankruptcy Code expressly grants authority to the Bankruptcy Court to determine the amount of tax claims.

FINDINGS OF FACT
In October of 1980 Debtor purchased a car dealership located in the State of Texas known as Cameron Motors ("Cameron"). His principal purpose in purchasing the business was to increase its car sales, turn it into a profitable business and then sell it for a profit in three years. Debtor provided the business with $105,000.00 as the total initial capital investment and received forty-nine percent (49%) of the stock in return. There was one other stockholder and in exchange for his fifty-one percent (51%) interest he provided the dealership with a Buick franchise, expertise and experience in the automobile business, and further agreed to repurchase the Debtor's forty-nine percent (49%) interest in three years.[1]
On four occasions between May and December of 1981, Debtor advanced slightly over $200,000.00 to Cameron. All of these advances were recorded in the company's books as indebtedness owed to Debtor and interest bearing notes were executed. Debtor received no increased ownership in the company for these advances and at all times believed he would be repaid through the profits or through the resale of his stock.
The business of Cameron was financially unsuccessful and was closed in 1982. None of the advances was repaid by Cameron to the Debtor. On his 1982 income tax return the Debtor declared these advances as bad business debts under 26 U.S.C. § 166 and deducted them from his 1982 earned income.[2], [3] He only deducted half the amount he advanced to Cameron because in 1982 he was divorced and one-half of the tax loss was given to his ex-wife under the Divorce Decree.
Thereafter IRS determined that the losses were nonbusiness bad debts and could only be deducted as a short-term capital loss and assessed deficiencies for 1982 as reflected in their final claim filed herein. Debtor contends that the advances made to Cameron were loans which were made as a part of his business of promoting businesses for resale and thus were deductible as bad business debts. If the Debtor is correct in his contentions, then the entire claim filed by the IRS should be disallowed. If the IRS is correct, then its claim should be allowed in full as finally filed.
The overall question presented is whether the Debtor is entitled to deduct his unrepaid advances to Cameron as bad business debts under 26 U.S.C. § 166. The answer *345 requires consideration of two issues: first, whether the advances made to Cameron constitute loans or contributions of capital and, second, if loans, whether they were proximately related to Debtor's business.
In determining whether the advances made to Cameron were loans or contributions of capital, the intent of the parties is the most important factor to be considered. Also it should be noted that it is perfectly proper for shareholders to make loans to corporations in which they own a substantial amount of stock. See Elliott v. United States, 268 F.Supp. 521 (D.Or.1967) and Los Angeles Ship Building and Dry Dock v. United States, 289 F.2d 222 (9th Cir.1961).
While no one factor is controlling several can be used to determine whether the advances were intended as loans:
(1) the nature of the entries on the corporate books;
(2) the fact that notes were issued; and,
(3) the fact that the one making the advance had reason to believe the money would be repaid with interest by the corporation.
Here the evidence revealed that the advances were entered on the corporate books as debts, not as capital contributions. There was also evidence that interest bearing notes were issued representing the obligations to repay the debts. Additionally, Debtor testified that, at the time he advanced the money, he believed he would be repaid with interest. This belief was reasonable given Debtor's history with other business ventures as detailed below, Cameron's adequate initial capitalization, and future plans to increase sales and profits. Moreover, the fact that Debtor did not receive any additional shares as a result of the advances indicates the parties intended a loan rather than a capital contribution. The IRS failed to introduce any evidence to the contrary and thus the Court finds the advances made by Debtor to Cameron were, in fact, loans.
Once it has been established that the advances made were loans rather than capital contributions, it is necessary to show that such loans were proximately related to the Debtor's trade or business. In order for the activity of lending money to a corporation to fall within the realm of the Debtor's "trade or business" he must show that he was individually in the business of seeking out, promoting, organizing and financing business ventures and that his activities in loaning money to Cameron were a part of that business. Whipple v. Commissioner of the I.R.S., 373 U.S. 193, 83 S.Ct. 1168, 10 L.Ed.2d 288 (1963); Giblin v. Commissioner of the I.R.S., 227 F.2d 692 (5th Cir.1955); and Elliott v. United States. These Courts have stated that such a determination requires a careful examination of the facts of each case. It is important to keep in mind that there is a fundamental difference between advancing monies to preserve one's interest in a corporation as a stockholder and advancing monies to make it profitable and ready for resale. In Whipple the Supreme Court rejected the argument that devoting one's time and energies to the affairs of a corporation is by itself a business. The Court similarly rejected the argument that being a stockholder of one or more corporations constitutes a business. While both may lend support to a finding that one is engaged in the business of dealing in enterprises, neither alone will suffice. Rather the Court said that for a taxpayer to establish a trade or business of promoting, organizing and financing corporations there must be a showing that the return expected to be received is different from that expected to be received by an ordinary shareholder seeking a return on his investment. The Court in Whipple stated as follows:
. . . The question before us is whether petitioner's activities in connection with several corporations in which he holds controlling interests can themselves be characterized as a trade or business so as to permit a debt owed by one of the corporations to him to be treated within the general rule of § 23(k)(1) as a "business" rather than a "nonbusiness" bad debt. . . .
*346 Whipple, 373 U.S. at 195, 83 S.Ct. at 1170.
. . . When the only return is that of an investor, the taxpayer has not satisfied his burden of demonstrating that he is engaged in a trade or business since investing is not a trade or business and the return to the taxpayer, though substantially the product of his services, legally arises not from his own trade or business but from that of a corporation . . .
Whipple, 373 U.S. at 202, 83 S.Ct. at 1174.
. . . To be sure, the presence of more than one corporation might lend support to a finding that the taxpayer was engaged in a regular course of promoting corporations for a fee or commission, see Ballantine, Corporations (rev. ed. 1946), 102, or for a profit on their sale, see Giblin v. Commissioner, 227 F.2d 692 (C.A. 5th Cir.), but in such cases there is compensation other than the normal investor's return, income received directly for his own services rather than indirectly through the corporate enterprise, . . .
Whipple, 373 U.S. at 202, 203, 83 S.Ct. at 1174.
The character of the debt for this purpose is not controlled by the circumstances attending its creation or its subsequent acquisition by the taxpayer or by the use to which the borrowed funds are put by the recipient, but is to be determined rather by the relation which the loss resulting from the debt's becoming worthless bears to the trade or business of the taxpayer. If that relation is a proximate one in the conduct of the trade or business in which the taxpayer is engaged at the time the debt becomes worthless, the debt is not a nonbusiness debt for the purpose of this amendment. H.R.Rep. No. 2333, 77th Cong., 2d Sess. 77; S.Rep. No. 1631, 77th Cong., 2d Sess. 90. Treasury Regulations 118, § 39.23(k)-6(b), adopts substantially this language of the Committee Reports as the test to be applied under § 23(k).
Whipple, 373 U.S. at 200 n. 9, 83 S.Ct. at 1173 n. 9.
In Giblin, the Court of Appeals stated as follows:
. . . We recognize the fact that the question whether the activities of a taxpayer constitute carrying on a trade or business is largely one of fact, the solution of which "requires an examination of the facts in each case." . . .
Giblin, 227 F.2d at 697.
. . . Clearly, on the undisputed facts, Giblin was such a person as was described in the cases we have cited above. On eleven or twelve occasions between 1926 and 1945 he had contributed his time, talent, energy and money to the exploitation of an idea to make money apart from his practice of law. . . .
Giblin, 227 F.2d at 698.
Also in Elliott v. United States, the District Court analyzed the facts carefully and found that the Debtor was engaged in the business of promoting businesses for resale and allowed him to deduct as a bad debt a loan to one of the businesses that was not repaid.
In the instant case the Debtor has, since 1966, participated in numerous business ventures either as an owner or consultant. While his main business efforts and his principal income were derived from oil and cattle businesses all of his other business ventures were bought for the sole purpose of rehabilitating them and then reselling them for a profit. The Debtor never devoted his full time and energies to any one venture and often spent great amounts of time investigating numerous business opportunities. In addition, other than for the oil and cattle business, it was never his intention to keep any of the businesses permanently. In fact, he often had a prospective buyer available at the outset of his involvement.
An examination of the Debtor's past business ventures provides support for his contention that he was engaged in the business of promoting, organizing and refinancing businesses for resale:
1. A car wash which he and a partner built and developed for resale in 1966. It was sold for a profit in 1971.
*347 2. Hill Park Mobile Home purchased in 1966 and sold in 1971 at a profit. He loaned money to help build the park and was repaid with interest.
3. New Ulm State Bank purchased in 1973 and sold in 1979 at a substantial profit.
4. Austin County Real Estate was started in 1972 and sold for a profit in 1983. He made loans at various times to the business, all of which were repaid with interest.
5. Acre Insurance Agency was an existing business purchased in 1979 and sold as a profit in 1981.
6. Shady Acres Day Care Center was built and developed by Debtor and other partners in 1976. He sold it at a profit in 1980.
7. His & Her Fashions was a clothing store that Debtor helped finance in 1976. It became successful and he sold it in 1977.
8. Three Bar Brangus was a cattle operation Debtor became involved with in 1977 and which he sold at a profit in 1983.
9. Pryor Bowling Alley was an existing business he purchased in 1981. He made various loans to the business and thereafter sold it at a profit in 1983.
10. Shiloh Ranch was purchased in 1980 and sold in 1982. This was the only business sold at a loss. However, at various times while in operation, Debtor loaned the business money which was repaid.
11. International Livestock Performance Center was a corporation in which Debtor became involved in 1981. It was a successful venture and was sold for a profit in 1983.
12. Cameron Motors.
This evidence establishes by a preponderance that Debtor was, in fact, in the business of promoting, organizing and financing businesses for resale. His goals were short term in nature and his dominant purpose was not to earn money as a shareholder from the earnings of the businesses but instead it was to rehabilitate the businesses and resell them at a profit. The Court also finds that his loans to Cameron were a part of this business.
In the year 1982 the Debtor also deducted a loss of $50,000.00 on his income tax return under 26 U.S.C. § 1244. This section of the Internal Revenue Code covers losses incurred by an investor on stock in a small business. It is not disputed in the instant case that the Debtor's loss on his stock in Cameron Motors for the year 1982 up to $50,000.00 was totally deductible. The IRS, however, contends that by claiming his loss as a stockholder, Debtor is prohibited from taking a deduction for his bad business debt. The IRS cites no authority for this proposition and this Court finds nothing inconsistent with the Debtor taking a deduction for a loss on his stock in Cameron and at the same time and for the same year claiming business bad debt deductions involving the same corporation.
IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the claim of the United States of America, Internal Revenue Service filed herein against Ronald L. Farrington's estate is denied.
NOTES
[1] At the time of purchase, the dealership was selling thirty (30) cars a year. Debtor testified he intended to increase the business to thirty (30) cars a month.
[2] 26 U.S.C. § 166(a)(1) provides: "Wholly worthless debts.  There shall be allowed as a deduction any debt which becomes worthless within the taxable year."
[3] 26 U.S.C. § 166(d) nonbusiness debts provides:

(1)(B) where any nonbusiness debt becomes worthless within the taxable year, the loss resulting therefrom shall be considered a loss from the sale or exchange, during the taxable year, of the capital asset held for not more than 6 months.
(2) Nonbusiness debt defined.  For purposes of paragraph (2), the term `nonbusiness debt' means a debt other than 
(A) a debt created or acquired (as the case may be) in connection with a trade or business of the taxpayer; or
(B) a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business.